## J. L. EDWARDS ET AL. V. R. G. BUCHANAN.

Delivered July 3, 1896.

**1.   Venue—Action for Joint Tort—Defendants Residing in Different Counties—Good Faith in Averment.**

Where plaintiff's petition, alleging a joint tort, is traversed by sworn pleas setting up the privilege of each defendant to be sued in the county of his residence, the fact that plaintiff acted in good faith in making such allegation, and not merely to enable him to bring the action in the county in which only one of the defendants resided, is unavailing if no joint tort be proved.

**2.   Same—Proof of Joint Tort Insufficient.**

Where the evidence showed that defendants, at different times and places, and each one acting only for himself, sold separate lots of cattle to plaintiff's partners, reserving the title to the cattle until payment of the purchase money thereof, and the cattle were turned over to plaintiff by his partners under a partnership contract by which plaintiff was to fatten them for market, and afterwards the sellers, each acting for himself and in reference only to the cattle sold by himself, took such cattle from plaintiff's possession, a joint tort was not proven.

**3.   Partnership Agreement—Contract to Buy and Fatten Cattle—Division of Profits and Losses.**

Where G. & E. agreed to buy cattle to be shipped to B., who was to furnish money to pay for their feed until ready for market, and upon sale of the cattle the proceeds were to be divided as follows: B. was to first receive the amount of his expenditures, with interest, and then G. & E. the amount paid by them for the cattle, and then the profits and losses were to be equally divided between the parties, such agreement constituted a partnership, and B. was affected with notice of the terms of sale under which G. & E. purchased the cattle from a third person.

APPEAL from Dallas.   Tried below before Hon. EDWARD GRAY.

*Watts, Aldredge & Eckford,* for appellant, Royal A. Ferris.—1. There is no evidence showing or tending to show that this appellant was a joint tort feasor, or committed any joint trespass upon plaintiff Buchanan, or his possession of the cattle named in his petition.   Byers v. Brandon, 30 S. W. Rep., 492; Prichard v. Norton, 106 U. S., 124; Hervey v. Locomotive Works, 93 U. S., 664; Cox v. U. S., 6 Peters, 172; Bishop on Contract, sec. 1390; 3 Am. & Eng. Ency. of Law, 661, and note 5, p. 563; Wyse v. Danbridge, 72 Am. Dec., 149.

*Carrigan & Montgomery,* for appellants, E. P. Davis and W. L. Donnell.—1. Where it is shown on a plea to the jurisdiction that defendants who interpose the plea to the jurisdiction were not residents of Dallas County, and that they never in any manner committed any tort with the only defendant in the suit who resided in Dallas County, where the suit was instituted, and the jury disregarded said plea, it is the duty of the court to set aside their finding when so requested by defendants. Rev. Stats., art. 1198; Hilliard v. Wilson, 76 Texas, 184; Cohen v. Munson, 59 Texas, 236, Seidenheim v. Muschamp, 72 Texas, 35; Stewart v. Gordon, 62 Texas, —; Clark v. Hills, 67 Texas, 148.

2.   Where two parties enter into an agreement, whereby one party is to buy cattle and the other is to feed and fatten them for market, and

when the cattle are sold the parties are to share equally in the profits and losses of said adventure, such a contract constitutes a partnership agreement. Miller v. Marx, 65 Texas, 133; Cothran v. Brown, 60 Texas, 372.

3. When one partner purchases cattle for the partnership, in the course of the firm business, and said cattle are purchased under contracts of conditional sales each member of said partnership is bound by the terms of said conditional sales. Davis v. Sansom, 62 Texas, 202.

*Bell & Atwell,* for appellants, D. H. and J. W. Snyder.—1. The allegations of plaintiff's petition showed that he and Gatewood & Edwards were partners. 17 Am. & Eng. Ency. of Law, 836-7; Parsons on Partnership, star p. 54, and note 5.

2. Buchanan, by reason of being a partner, was chargeable with notice of the terms of his co-partner Edwards' purchase of the Snyder cattle, so bought for the firm, whatever their private agreement might be as between themselves. Ford v. McBryde, 45 Texas, 498; Coons v. Remick, 11 Texas, 134; 17 Am. & Eng. Ency. of Law, 1080; Cothran v. Marmaduke, 60 Texas, 370; Goode v. McCartney, 10 Texas, 193.

3. Where a party to a joint enterprise for profit is entitled to share in the profits as profits, he is a partner. Goode v. McCartney, 10 Texas, 193; Cothran v. Marmaduke, 60 Texas, 370; Marbut v. Moore, 4 S. E. Rep. (Ga.), 383; Kuhn v. Newman, 49 Iowa, 424; Hunt v. Erikson, 57 Mich., 330, 23 N. W. Rep., 832; Atwood v. Peregoy, 22 Neb., 238, 34 N. W. Rep., 378; 17 Am. & Eng. Ency. of Law, 836; Parsons on Partnership, star p. 54 and note 5.

*Ashby S. James, H. G. Robertson* and *John C. Robertson,* for appellee.—1. When several defendants have been guilty of an interference with the rights of a plaintiff they all stand in exactly the same relation with reference to their liability to such plaintiff, and as joint tort feasors will be jointly and severally liable to him for whatever damage he may have suffered in consequence of such tort by the defendants, even though as a matter of simple fact, so far as actual, immediate damage is concerned, the various defendants may stand in very different degrees. Bell v. Miller, 5 Ohio; Olen v. Upsahl, 69 Ill.; Wallard v. Worthman, 84 Ill.; Brown v. Perkins, 1 Allen; Bishop on Non-Contract Law, 231-233.

2. An agreement between parties specifying that all profits made in the transaction or transactions with reference to which the agreement was made are to be divided equally between them or in case of loss, such loss to be borne equally by all, does not necessarily constitute a partnership and will not be so considered where it is clear from a consideration of the agreement that each party to it was to act solely in one line and was not concerned at all in the actions of the other, though both would be ultimately interested in such profits or losses as might result from the undertaking. Buzard v. First National Bank, 2 S. W.

Rep., 54; Marsh v. Insurance Co., 3 Biss., 351; Fawcett v. Osborn, 32 Ill., 411; Snell v. DeLand, 43 Ill., 323; Munroe v. Greenhol, 54 Mich., 9; Donnell v. Harsche, 67 Mo., 170; Clifton v. Howard, 87 Mo., 192; Edwards v. Tracy, 62 Pa. St., 374; Farrand v. Gleason, 56 Vt., 633; Bates on Partnership, sec. 29.

FINLEY, ASSOCIATE JUSTICE.—Appellee states his cause of action as set forth by his pleadings, as follows: "This suit was brought by ap pellees, R. G. Buchanan and wife, Sallie Buchanan, of Tennessee, against appellants, J. L. Edwards, W. L. Donnel, Thos. Powers, E. P. Davis, B. Gatewood, D. H. and J. W. Snyder, S. D. Davis, J. J. Daws and R. A. Ferris of Texas. Plaintiffs' amended petition, dismissed as to Powers, deceased, and alleged that in the latter part of September, 1891, the petitioner R. G. Buchanan entered into an agreement with B. Gatewood and J. L. Edwards, acting together as the firm of Gatewood & Edwards, with a view to feeding and fattening cattle for the market, the purport of which was that Gatewood & Edwards should buy 1000 head of cattle in Texas at the most advantageous price attainable and place them on the cars in Texas and ship them to the feeding points at Memphis, Tennessee, where they were to be taken in charge by R. G. Buchanan, the freight to Memphis and feeding to be paid by Buchanan, and that when the cattle were sold, Buchanan should be first repaid his said expenses, with 10 per cent interest on same, that then Gatewood & Edwards were to be repaid the cost of said cattle, with 10 per cent interest, and that the remainder of the proceeds should go one-half to Buchanan and one-half to Gatewood & Edwards; and in the event of a loss, Buchanan was to bear one-half and Gatewood & Edwards the other half; that subsequently the number of cattle to which this agreement should apply was increased to 1500 head, and later to 2170 head (all of which were placed in the Union Stock Yards) and later still 1209 were included in the above agreement, though these were placed in some stock yards in North Memphis. Plaintiff further alleged that he was using his wife's means, name and credit and was thereby enabled to perform all his said agreements; that he believed Gatewood & Edwards were men of large means and it was understood that said cattle were to be free from incumbrance, and that under the contract Buchanan had a first lien for what he had expended, but that after Buchanan had expended about $24,000 of his wife's means in preparing the cattle for market, it developed that the cattle had been bought upon credit and the title retained to secure the purchase money by secret agreements with the sellers to defraud the plaintiffs who were feeding and attending to said cattle at great expense; that petitioner, when he discovered the liens, was in a position to carry out his contract, if the sellers would ratify the same and recognize his superior interest in the cattle or their proceeds on account of his expenditures, but that instead of doing so, said parties, acting together (those who were not present knowing of the condition of matters and ratifying the same), held a secret meeting

without plaintiffs' consent, and acting under their secret agreements with Gatewood & Edwards, about June 30, 1892, took possession of said cattle and deprived petitioner of the possession and control thereof, and refused to allow him any voice in their management; that at the time of such seizure Buchanan had fully carried out his contract with Gatewood & Edwards in feeding and caring for said cattle, and so improved their condition that they had increased in value about $10 per head above their cost and price for fattening them, so that there was a profit in 3199 cattle of $31,990, and that Buchanan had at that time spent on them $24,000; that plaintiffs do not know how the proceeds of said cattle were distributed among defendants, but is advised that it was a common agreement among them that they would ignore plaintiff's rights in said cattle and deprive him of possession thereof, and that they conspired together for that purpose, and that the sellers were to receive, when the cattle were sold, each his share of the proceeds as shown by their contracts of sale.

"Petitioner further charged by way of second count that plaintiffs were entitled to larger damages than the sum above named, for the reason that it was contemplated in their agreement with Gatewood & Edwards that the cattle should be held until about April 1, 1892, but that after sellers took possession of same, the sellers misfed them, and in consequence sixty-five head died, and the others lost flesh and decreased in value so that when they were sold they had sustained an average loss from the value they would have reached if properly fed, of $25 per head. That the defendants sold said cattle for about $100,000 and plaintiffs got no part thereof, and that same was converted by said sellers to their own use.

"Plaintiff charged that the property and money used in feeding said cattle and caring for the same were in the main the separate property and means of Sallie Buchanan, in whose name some of the arrangements and contracts were made, and that said Sallie Buchanan was made a party plaintiff in order that the judgment might inure to her separate estate and benefit so far as the facts and the consent of R. G. Buchanan justified." Plaintiff claimed damages for the above matters in the sum of $75,000, and ended with a prayer for general relief.

Gatewood & Edwards answered, pleading in abatement their privilege to be sued in the county of their residence, Ellis County, and by exceptions and general denial. They have filed no brief here.

Appellants E. P. Davis, S. D. Davis, W. L. Donnell and J. J. Daws jointly answered, and pleaded: (1) Plea to the jurisdiction, controverting under oath plaintiffs' allegations of joint tort with Ferris and other defendants, and claiming the privilege to be sued in the counties of their residence. (2) Exceptions to plaintiffs' petition. (3) General denial. (4) Statute of two years limitation. (5) They answered, that they sold some of the cattle as described in plaintiffs' petition to one J. L. Edwards, and reserved, by conditional sales, the title to said cattle so sold by them at all times in themselves until said cattle should be paid

for in full, and that plaintiff had notice of said facts: that the plaintiffs performed no labor and expended no time and money and incurred no indebtedness in regard to said cattle prior to the execution of said sales aforesaid: that all of said work and labor performed and money expended and indebtedness incurred in regard to said cattle, as alleged by plaintiffs, was done and performed in the State of Tennessee, subsequent to the time said cattle arrived in Shelby County, Tennessee, and subsequent to delivery and execution of said sales as aforesaid: that under the laws of the State of Tennessee, where plaintiffs at all times resided, said conditional sales were valid as to all parties, and notice to plaintiffs without the necessity of registration: that the registration laws of Texas requiring conditional sales of personal property to be recorded, in order to give notice, is not the law in Tennessee: that the contracts of conditional sales made between these appellants and J. L. Edwards were valid and binding under the laws of the State of Tennessee, and notice to all parties without registration: that the appellant E. P. Davis sold to J. L. Edwards 847 head of cattle November 3, 1891, and 323 head on the 23d day of November, 1891, and that both of said sales were in writing and were conditional sales, reserving the title in appellant Davis, and that each of said conditional sales were executed and delivered on their respective dates in the State of Tennessee: that appellant W. L. Donnell sold to J. L. Edwards on December 22, 1891, 165 head of cattle, and on January 6, 1892, 196 head: that said sales were in writing and were conditional sales, reserving the title in said W. L. Donnell until said cattle were paid for in full: that said contract dated January 6, 1892, was filed for registration in Shelby County, Tennessee, January 11, 1892, and properly recorded in Shelby County, Tennessee: that said contracts were valid without registration as to all parties under the laws of Tennessee: that said conditional sale of December 22, 1891, was filed for registration in Shelby County, Tennessee, on January 11, 1892, and properly recorded in Shelby County, Tennessee, according to the laws of the State of Tennessee: that appellants had no contract of any kind with plaintiffs: that appellants had no notice of any contracts between the plaintiffs and Gatewood & Edwards, as alleged in their petition, prior to the time of the execution or delivery of their conditional sales: that there was a partnership between R. G. Buchanan and Gatewood & Edwards from about September 1, 1891, until May 1, 1892, which partnership was for the purpose of buying, feeding, fattening, shipping and selling cattle: that in pursuance of said partnership business, said J. L. Edwards executed and delivered to these appellants said conditional sales and purchased said cattle as stated in said contracts of conditional sales for said partnership, and that the original purchase price of said cattle has never been paid these appellants, and that there are yet large sums of money due the appellants on their contracts of conditional sales.

Defendants D. H. and J. W. Snyder answered by pleading misjoin-

der of parties plaintiff and defendant, and under the latter plea set up that they had no connection of any kind with any of their codefendants, and did not act in connection with them in any of the matters complained of; that in all they did they acted separately and independently of the other defendants, and did not act except in relation to 1000 head of cattle sold by them to Gatewood & Edwards, and therefore prayed that the suit abate.

They also answered by general demurrer and general denial, and by special plea that the matters complained of were as follows:

"That Buchanan and Gatewood & Edwards were a partnership firm engaged in buying cattle and shipping them into Tennessee, and there fattening them for sale, and that on December 1, 1891, the Snyders sold to Edwards, who purchased same for said firm, 1000 head of cattle for $21,500, and 10 per cent interest, payable April 1, 1892, and that said contract of sale expressly retained title to said cattle in the Snyders until paid for; that all the contracts in relation to said cattle were made in view of and contemplated their removal to Tennessee and the performance of the contract there;" and they attached to their answer as an exhibit their said contract of sale to Edwards showing said retention of title, and containing an agreement by Edwards to ship said cattle to Tennessee and there feed them for market, and not to sell them without the Snyders' consent; that the cattle were at once shipped to Memphis, Tennessee, in which State plaintiffs at all times resided; that none of plaintiffs' expenditures, etc., on said cattle occurred prior to their arrival there, and that under the laws of Tennessee, said conditional sale was valid against all persons without registration, and that plaintiffs also had notice at all times of the above matters.

"That plaintiffs failed to pay the freight on said cattle to Memphis, amounting to $3672, and that having contracted large indebtedness for feed, they were unable to meet same or procure feed for the cattle, and thereupon, with the consent of all members of said firm, defendants Snyders had the payment of the amounts due and to become due for feeding said 1000 head of cattle guaranteed, with the understanding that when the cattle were sold their proceeds should be applied first to the payment of said amounts, and next to the payments of Snyders' claim; that all the Snyders' acts were done under said contracts and with the consent of all parties, and the amount received by them was insufficient to pay their claim; and that Buchanan having failed to comply with his contract, it was impossible for said firm to accomplish its purpose, and the other members were compelled to take said steps to protect themselves, and Buchanan forfeited all his rights in the cattle; that there had never been any settlement of said partnership affairs; that plaintiffs could recover only what such settlement would show their interest in said cattle to be, and that such a settlement would show such interest to be nothing; for if they had any such interest, then, as such partnership venture resulted in a loss, of which, under the contract between Buchanan and Gatewood & Edwards, one-half was to be borne

by Buchanan, that the portion of such loss which had already fallen upon Gatewood & Edwards so far exceeded that of Buchanan as to leave him no interest in the assets of the concern."

Appellant R. A. Ferris interposed the following defenses: 1, general denial; 2, that on December 18, 1891, Ferris & Price, copartners, sold to J. L. Edwards 313 head of cattle at the price of $18 per head for 3-year-olds and upward, and $13 per head for 2-year-olds; said cattle to be delivered on the cars at Iatan on the Texas and Pacific railway, for shipment to Memphis, Tennessee, within thirty days from date of said contract. By the terms of said contract of sale said Edwards agreed to pay the freight on said cattle to Memphis, Tennessee, and at his own expense to fatten said cattle at Memphis. They were not to be sold without the written consent of Ferris & Price, and the said purchase money was to be first paid out of the proceeds of sale, the title to said cattle to remain in said Ferris & Price until said purchase money was paid. If treated as a Texas contract, then by its terms Ferris & Price retained a lien on said cattle for said purchase money. It was further agreed that Ferris & Price should have the right to appoint an agent or agents to look after said cattle and see that they were properly cared for, and said contract further stipulated that if said Ferris & Price should conclude that said cattle were not being properly cared for and fed, they, at their option, should have the right to take possession of said cattle and have them properly cared for and fed and marketed as their own, and they to be under no obligation to said Edwards for any sums of money that had been expended in the transportation of said cattle or in the feeding of the same; that said cattle should in no way be subject to a lien for any feed fed to said cattle, said sale being for all the cattle of Ferris & Price on the Wardell ranch, whether more or less than 500 head.

This contract was duly acknowledged for registration. Under it 313 head of cattle were on December 26, 1891, delivered to J. L. Edwards at Iatan, in Mitchell County, Texas. Said cattle reached Memphis, Shelby County, Tennessee, on December 28, 1891, and said contract was duly filed for registration in the office of the register of chattel mortgages of Shelby County, Tennessee, on December 31, 1891.

At the date of the contract between J. L. Edwards and Ferris & Price, and also when the cattle were so delivered at Iatan, Ferris & Price were wholly ignorant of the arrangement and agreements between Gatewood & Edwards and R. G. Buchanan.

Upon the trial of the case, it appearing that Thomas Powers was dead, the cause was dismissed as to him. By action of the court, that feature of the case presented by the pleadings of plaintiffs setting up an alleged separate interest in the suit for his wife was eliminated.

The cause was tried by a jury, and resulted in a verdict and judgment in favor of the plaintiff for $18,120.32 against all of the defendants jointly, except J. J. Daws and S. D. Davis. As to the last

named defendants, the jury found in their favor upon the issue of limitation.

All the defendants in the judgment have appealed to this court.

*Opinion.*—It will not be necessary to a proper disposition of the case that we should take up the assignments of error as presented in the briefs of the different sets of defendants. We will examine the material questions raised by the several defendants, and consider them in regard to the entire case, rather than in connection with the interests of the defendants separately.

The different appellants, under separate assignments of error and in different forms, urge that the case as developed upon the trial does not show a joint tort for which the defendants may all be sued in one action and be made jointly liable.

The petition of plaintiff clearly discloses the character of the suit to be an action for damages, based upon a tort committed upon plaintiff's possession of the cattle by the defendants, acting together under a common understanding and agreement; they having conspired together to commit the wrongs and injuries complained of.

The venue of the suit is laid in the petition, by the allegation that Royal A. Ferris, one of the alleged joint tort feasors, resides in Dallas County, Texas, the county in which the suit was instituted. The verdict and judgment pronounce a joint liability against the defendants for the sum of $18,120.32.

The case as made by the pleadings must have been established by the evidence to justify the verdict and judgment rendered. The special pleas of privilege to be sued in the county of their residence filed by some of the defendants, and the pleas of misjoinder filed by others, are based upon the proposition that there was no joint tort, as alleged. It is deemed unnecessary to consider whether the pleas were waived by not being urged upon the attention of the court at the first term, as the question involved in such pleas is properly raised in a different manner, and is of controlling effect in the disposition of this appeal.

To sustain the verdict and judgment, the evidence must be sufficient to sustain the finding that the defendants acted together in the commission of the alleged trespass. If they acted separately, without a common understanding, and such separate action had relation to different cattle claimed separately by them, and their actions entailing consequences of different magnitude, then the case of a joint tort, made by the pleadings, was not sustained by the proof.

1. The plaintiff R. G. Buchanan, entered into a contract with Gatewood & Edwards, by the terms of which Gatewood & Edwards were to purchase 1000 head of feeding steers in Texas, and ship them to Memphis, Tennessee, or Huntsville, Alabama. Buchanan was to pay the freight on the cattle from Texas to Memphis, or Huntsville, and was to furnish the money to pay the feed bills, the cattle to be fed until they were fat. The cattle were then to be sold and the proceeds

of the sale applied, first, to payment of expenses of freight, feeding and yard rents and 10 per cent per annum interest on the money paid out for these purposes by Buchanan; second, the payment to Gatewood & Edwards the cost of the cattle, and 10 per cent per annum interest on the money paid out by them; third, the profit or loss should be equally divided between Buchanan and Gatewood & Edwards, one-half to Buchanan and one-half to Gatewood & Edwards. The agreement as to the number of cattle was subsequently extended until it reached 3223 head of cattle.

2. In pursuance of this agreement, Gatewood & Edwards purchased and shipped to Memphis the following bunches of cattle: In October, 1891, they contracted with E. P. Davis, in Texas, for 847 head of cattle; they were shipped to Memphis and consigned to J. L. Edwards, and arrived in Memphis November 3, 1891, and were by Edwards delivered to Buchanan for feeding. Later they purchased 323 head from E. P. Davis, and in the same manner shipped them to Memphis and delivered them to Buchanan, about November 23, 1891. The sale to Edwards of these cattle by Davis was conditional upon the payment of the purchase price, which amounted to $21,286.86, nothing being paid at the time. Davis and Edwards both went with the cattle to Memphis, and there they entered into a written contract of sale, Davis reserving title to the property until the cattle were paid for by Edwards. This contract was not recorded, and Buchanan did not know that Davis had reserved title in himself to secure payment of the purchase money.

December 22, 1891, they bought of W. L. Donnell, in Texas, 165 head of cattle, and on January 6, 1892, 186 head. The contracts of sale were in writing and in terms substantially the same as the Davis contracts. The purchase price was $6457, and none of this sum was paid at the time of purchase. The contracts were recorded in Memphis, Shelby County, Tennessee, January 11, 1892, after the cattle were delivered there to Buchanan.

They bought from D. H. and J. W. Snyder 1000 head of cattle December 1, 1891, which were delivered to Buchanan in Memphis, December 5, 1891. The terms of this contract of purchase were in effect the same as those previously mentioned. The price agreed to be paid was $21,500, no cash being paid. The contract was recorded in Shelby County, Tennessee, Memphis being in Shelby County, January 8, 1892.

There were sold to Gatewood & Edwards, in Texas, under similar contracts, by Thomas Powers, 186 head of cattle; by J. J. Daws, 122 head, and by S. P. Davis, 45 head. These cattle were delivered in Memphis December 24, 1891. Royal A. Ferris sold to Edwards, in Texas, 343 head of cattle, under same character of contract, and they were shipped by Edwards to Memphis and delivered to Buchanan, arriving there December 28, 1891. The contract was duly recorded there December 31, 1891.

All the cattle of E. P. Davis and Snyder Bros., amounting to 2174 head, were placed and fed by Buchanan in the Union Stock Yards at

Memphis, and the feed was procured by Buchanan from the De Soto Oil Company. The remainder of the cattle, amounting to 1053 head, were placed in the North Memphis Yards, and feed procured from the Gayoso Oil Company. The cattle were branded so that they could be identified. All the cattle were bought upon credit. Each of the contracts provided for the shipment of the cattle to Memphis, there to be fed and fattened for market, and in addition to the express reservation of title in the vendors to secure the purchase money, the contracts also gave the vendors the right to resume possession in case it should be seen that the cattle were not properly fed and cared for. None of these contracts recognized Buchanan as a party, and at the time of their execution, the vendors were not apprised of the terms of the contract between Buchanan and Gatewood & Edwards. Buchanan fed and cared for the cattle for some time, making considerable expenditures for feed; but the mills furnishing the feed finally declined to furnish it unless they were paid in cash or given a first lien upon the cattle. Buchanan was unable to pay cash for the feed for so large a lot of cattle, and testified that it was understood between Gatewood & Edwards and himself, that the cattle should be security for the feed. He notified Gatewood & Edwards of the demand for security made by the mills, and then they notified him for the first time, he claims, that the owners of the cattle had retained title in themselves to secure the purchase price. The several owners of the cattle were then called to Memphis by telegram and advised of the situation. Each of them resumed the possession of the cattle sold by them respectively, separately arranged for their feed and care, left them in charge of Edwards, and they were finally sold at a loss to the owners, and Buchanan was not re-imbursed for his expenditures upon the cattle, amounting to a large sum.

It is the contention of appellee Buchanan that appellants were not justified under the law in depriving him of the possession of the cattle, and that they conspired together and acted together with Royal A. Ferris in wrongfully and forcibly dispossessing him of the cattle. Leaving out of view, for the present, the contention that his rights were superior to those of the vendors, and that he was not affected by the reservation of title in the contract of sale, did the defendants conspire and act together in depriving him of the possession of the cattle? As has been shown, their contracts of sale were separate, made at different times and different places, under different conditions, and wholly without reference to each other. When they came to Memphis in answer to the request of Gatewood & Edwards and Buchanan, it was shown that several of them met in the room of Royal A. Ferris; that they were there fully informed of the situation, and it may be fairly assumed that they talked about the matter. But it was not shown that any common understanding was reached, or plan of action agreed upon by them. On the contrary, the evidence shows that they acted separately, each for himself, and in relation to his own particular interest and property. It may be also remarked, that the record fails to show that they forcibly dispos-

sessed Buchanan of the cattle. It does show that they resumed posses-
sion; but that they regained possession by force or fraud so as to be
chargeable with the commission of a tort, is not shown by the evidence.
The record tends to show that Buchanan acquiesced in their resumption
of the possession of their respective cattle, and we find no basis in the
proof upon which the allegation of joint tort can rest.

It is not surprising that the jury should have rendered a verdict for
the plaintiff, in so far as this issue may be concerned, for the charge of
the court did not make it necessary that they should find that a joint
tort had been committed before they could find against the defendants.
The court only submitted that issue in relation to the special plea of
privilege to be sued in the county of their residence, urged by some of
the defendants, and did not properly present the law in that connection.
The jury were told, in effect, that if they believed the plaintiff had filed
his suit in good faith, believing that the defendants had acted together,
and did not fraudulently make the allegation of joint tort to fix the
venue in Dallas County, that they would find for the plaintiff on this
issue, though the evidence showed that the defendants did not in fact
act together. This was error; it was a question of joint tort vel non,
raised by the sworn plea traversing the fact of a joint tort. Proof of
good faith in the making of the allegation would not answer for proof
of the fact alleged.

It is urged by appellants, under assignments of error directed at the
main charge, the refusal of special charges, and the evidence produced,
that the claim of Buchanan upon the cattle and the proceeds of sale is
subordinate to the rights of the owners, who contracted with Gatewood
& Edwards for their sale upon condition of the payment of the purchase
money, and retained title in themselves until the performance of that
condition.

In support of this contention, it is first urged that Buchanan was a
partner with Gatewood & Edwards in the dealings and transactions had,
and that he must take notice of the facts known to his partners. It is
admitted that the following correspondence correctly states the terms
of the agreement between Buchanan and Gatewood & Edwards:

"Ennis, Texas, Sept. 29, 1891.
"R. G. Buchanan, Memphis, Tenn.

"Dear Sir: * * * Let us see if we understand each other. Mr.
Gatewood informs me that Gatewood & Edwards are to furnish 1000
head of feeding steers, the best that can be bought in Texas for the
money, to select them with great care and make the best trade possible
and load them on the cars and start them to the feeding pens in Mem-
phis, Tenn. * * * R. G. Buchanan is to pay the freight bills from
the place of shipment in Texas to the feeding pens to the railroad com-
pany and furnish the money to pay the feed bills until the cattle are
fat. The cattle are to be sold and the proceeds to go, first, to pay for
the expenses of feeding and all yard rents and the freight money ad-

vanced by Buchanan and ten per cent per annum on all money paid out by said Buchanan, and next, to pay Gatewood & Edwards the cost of the cattle and ten per cent interest on all moneys paid out by said Gatewood & Edwards. Third, whatever moneys are made as profits to be divided equally in two parts, Buchanan to have one part and Gatewood & Edwards to have the other part. In the event there is a loss instead of a profit, then Buchanan is to bear one-half the loss and Gatewood & Edwards the other half. Now if this is your understanding of the agreement between you and ·Gatewood, then I say close the contract for the feed and lots * * *.

> "GATEWOOD & EDWARDS, Per J. L. Edwards."

In reply to said letter the following telegram was sent:

"Memphis, Tenn., Oct. 1, 1891. Gatewood & Edwards, Ennis: Statement agreement your letter correct. Closed contract feed and yards. Will write. R. G. BUCHANAN."

The letter was as follows:

> "Memphis, Tenn., Oct. 1, 1891.
> "Messrs. Gatewood & Edwards. Dear Sirs: Your letter per Mr. Edwards, reciting the agreement previously agreed verbally between Mr. Gatewood and myself is correct in every particular. It occurs to me it might be better to begin feeding later, but our interests being identical with you, I leave the matter altogether with you.
> "R. G. BUCHANAN."

The only change in the contract above set out which appellee contends was made, relates to the increased number of cattle, the payment of freight on such increased number, and the understanding that a lien was to be given upon the cattle to secure their feed.

If this was a partnership agreement and undertaking, in the absence of fraud and collusion by the owners of the cattle and Gatewood & Edwards against Buchanan, the latter must be held to have had full notice of the dealings and transactions of his partnership associates in relation to the subject matter of the partnership. 17 Am. & Eng. Ency. of Law, 1080.

The parties to this agreement saw proper to express the terms of their contract in writing, and as it is clear and unambiguous, their relations must be determined from such written expression. Appellee's counsel construe the contract to mean,—an engagement by Buchanan to feed and fatten cattle for Gatewood & Edwards, he to pay the freight bills and freight charges upon the cattle, for which services and expenditures he was to be paid and reimbursed by Gatewood & Edwards out of the proceeds of the sale of the cattle,—and the court below took this view of the case. Appellants, on the other hand, insist that there was a joint undertaking of the parties in a speculative venture, and that the agreement possesses all the essential features of a partnership.

(1)   The agreement provides for the purchase by Gatewood and Edwards of a certain number of feeding steers, the best that can be bought in Texas for the money; they to select them with the greatest care and to make the best trade possible, and ship them to Memphis, Tennessee.

(2)   Buchanan is to pay the freight bills for shipping the cattle from Texas to Memphis, and furnish the money to pay for the feed until the cattle are fat.

(3)   The cattle are then to be sold and the proceeds of the sale to go as follows, first, Buchanan is to be reimbursed for his expenditures, with 10 per cent per annum interest on his money; second, Gatewood & Edwards are to be reimbursed for their expenditures, and 10 per cent interest on their money so paid out; third, the profits or losses are to be equally divided, one half to Buchanan and one half to Gatewood & Edwards.

Here we have a speculative venture entered into by the parties, into which each is to put money, with the object of gaining profit and being benefitted by sharing therein.   Each party contributes to the enterprise, is entitled to share in the profits, and assumes the risk of loss.   If there is any essential feature of a partnership which is not present in this agreement, we have not been able to discover it.   Parsons on Partnership, secs. 41-60; 17 Am. & Eng. Ency. of Law, 836-837; Rogers v. Nichols, 20 Texas, 724; Cothran v. Marmaduke & Brown, 60 Texas, 370; Goode v. McCartney, 10 Texas, 193.

The court should have instructed the jury that the effect of the contract made Buchanan a partner with Gatewood & Edwards, and that the law affected him with notice of the facts known to his associates relating to the subject matter of the contract.

Taking this view of the case, it is unnecessary to consider the question of notice as affected by the registration laws of the States of Texas and Tennessee.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*