## STRAWN NAT. BANK v. MARCHBANKS et al.

### No. 1295.

Court of Civil Appeals of Texas. Eastland.

June 29, 1934.

Rehearing Denied Sept. 21, 1934.

J. R. Creighton and Ritchie & Ritchie, all of Mineral Wells, for appellant.

L. H. Flewellen, L. R. Pearson, and W. S. Adamson, all of Ranger, for appellees.

HICKMAN, Chief Justice.

This cause was formerly before this court on an appeal by Houston Brashears from an order of the district court of Palo Pinto county overruling his plea of privilege. See Brashears v. Strawn National Bank (Tex. Civ. App.) 57 S.W.(2d) 177. Pursuant to our order, the cause was transferred to, and tried in, the district court of Eastland county, Eighty-Eighth judicial district, from which court an appeal has been duly perfected to this court.

The appellant bank sued Wes Marchbanks and wife, Villa Marchbanks, and Houston Brashears upon certain promissory notes signed "Wes and Villa Marchbanks by Wes Marchbanks," and for the foreclosure of a chattel mortgage upon certain cattle. Liability was asserted against Brashears upon the ground that he was a dormant partner with Wes Marchbanks, and that, while the notes declared upon were signed by Wes and Villa Marchbanks, they were in fact executed as the act and for the benefit of the partnership; the said Marchbanks having authority to execute the same as the agent and representative of his coadventurer and copartner. Brashers denied under oath the existence of the partnership alleged, and denied the authority of Marchbanks to bind him upon the obligation declared upon. By way of cross-action, Brashears sought judgment against the bank and Marchbanks for converting certain cattle alleged to have belonged to Brashears. The case was tried before the court without the assistance of a jury, and resulted as follows:

The bank was awarded judgment against Wes Marchbanks for the principal, interest, and attorney's fees on the notes declared upon. No question is presented on this appeal as to the correctness of that portion of the judgment. No recovery was had against Villa Marchbanks; the evidence having disclosed that she was a married woman and that the notes were not executed for a purpose for which she could legally contract. Upon a finding that Brashears and Marchbanks were not partners, no recovery was had against the former. To Brashears' cross-action for damages and conversion both Marchbanks and the bank pleaded the two-year statute of limitation, which was sustained by the trial court, and no cross-assignments of error as to this portion of the judgment are brought forward. The only assignments presented relate to that

portion of the judgment denying the bank a recovery against Brashears, and denying it a foreclosure of its chattel mortgage lien. Findings of fact and conclusions of law were filed by the trial judge, from which we glean the following essential facts:

The agreement claimed by appellant to have created the relationship of partners between Brashears and Marchbanks was in writing, and in the form of a letter, as follows:

"Ranger, Texas,
"June 10, 1929.

"Mr. Houston Brashears, Ranger, Texas. Dear Sir:

"I know of a cow deal that can be made on 80 head of steers and 50 head of heifers. The cattle are now owned by M. M. Copeland of Caddo. If you could see fit to furnish the money to purchase the above mentioned cattle, which will amount to $7,680.00, I will see that they are properly cared for, will furnish the grass without any expense to you, whatever, and the title to the cattle will remain in your hands until they are sold, at which time I will expect one-half of the profits.

"If you wish to accept this proposition, please sign at the place indicated for your signature.

"Yours very truly,
"[Signed] Wes Marchbanks
"Wes Marchbanks.

"I accept the above proposition:
"[Signed] H. Brashears.
"Houston Brashears."

The cattle were purchased in accordance with this agreement, and were brought from Caddo, in Stephens county, to Ranger, in Eastland county, where, at the instance of Brashears, a change was made in their brand. When they were purchased, they were branded U on the left side. At the instance of Brashears, a bar was placed before the U, so as to make the brand ——— U. After these cattle were branded, they were removed to two separate ranches in Eastland county, which were then under lease to Marchbanks. Marchbanks owned some individual cattle, which he kept on these ranches, in which cattle Brashears had no interest. From the date of the purchase of said cattle, the market value of same steadily declined, and a heavy loss was sustained in the venture by Brashears. During the fall of 1930, Marchbanks borrowed $750 from Brashears with which to purchase feed for said cattle, and executed his note to Brashears for that amount. With regard to the relations of Marchbanks and the bank, the court made the following findings:

"I find that Wes Marchbanks, during all of said time and for several years prior thereto, was doing his banking business with the plaintiff, the Strawn National Bank. I further find that Marchbanks was indebted to said bank in various sums, beginning about the year 1925 down to the date of the institution of this suit. I further find that on June 10, 1929, Wes Marchbanks was indebted to the plaintiff, the Strawn National Bank, in the sum of $2,600.00. On May 12, 1930, Marchbanks was indebted to the plaintiff, the Strawn National Bank, in the sum of $4,404.-44. I further find that Marchbanks, during all of said time, carried his account in the name and executed notes and mortgages to said bank in the name of 'Wes and Villa Marchbanks by Wes Marchbanks.'"

"I find that on November 17, 1930, Marchbanks executed a note to the Strawn National Bank for $3276.35, and providing for ten percent interest from date and ten percent attorney's fees, and on the same day executed a mortgage to said bank to secure said note on the following described cattle:

"50 white-faced two-year old steers, branded ———U on left side.

"51 head 3-year old Hereford cows, same brand.

"50 coming yearlings, branded ———U.

"I find that said chattel mortgage was duly registered in the Chattel Mortgage Records in Eastland County, Texas, on November 18, 1930.

"I find that on December 17, 1930, Marchbanks paid $300 on said $3,276.35 note. I further find that on January 5, 1931, Wes Marchbanks borrowed $380 additional from the plaintiff bank and executed a note to said bank for said amount, same providing for ten percent interest from date and ten percent attorney's fees. I further find that both of said notes and said mortgages were executed by Wes Marchbanks in the name of 'Wes and Villa Marchbanks by Wes Marchbanks.' I further find that Brashears received none of the proceeds of said notes and did not know of the execution of said notes and said mortgage until February, 1931.

"I further find that Wes Marchbanks had a 'mental breakdown' on or about January 25, 1931, and that on or about said date he suddenly disappeared. I further find that a few days after the disappearance of the said Marchbanks, the defendant, Brashears, ascertained for the first time that said two notes and mortgages above described had been executed by Marchbanks to the plaintiff bank."

Further findings are as follows:

"I find that on or about November 17, 1930, and prior to the execution of the mortgage of that date, the plaintiff bank employed J. O. Allen, one of its directors, to inspect the cattle included in said mortgage. I find that J. O. Allen, as agent and director of said bank, did inspect said cattle and informed said bank that said cattle were ample security for said $3276.35 note. I further find that the said J. O. Allen notified the bank that he was passing on the value of said cattle only, and not the title thereto, and that the bank would have to make its own investigation and satisfy itself as to the ownership of said cattle. I further find that the plaintiff bank made no further investigation as to the ownership of said cattle and the authority of Marchbanks to execute said mortgage. I further find that said bank had sufficient information and notice to put it on inquiry and that if pursued with reasonable diligence it would have ascertained that Marchbanks did not own said cattle and had no authority to mortgage same.

"I find that the indebtedness herein sued on by the bank, represents an old line of indebtedness owing by Marchbanks to said bank prior to November 17, 1930, except the sum of $944.35."

The court concluded that there was no intention on the part of either Marchbanks or Brashears to enter into a partnership; that Marchbanks had no interest whatever in the subject-matter of the cattle; and that, as compensation or remuneration for furnishing the grass and caring for the cattle, he was to receive one-half of the profits, if any, when the cattle were sold.

Appellant's brief contains thirteen propositions, but, as we view the case, only two controlling questions of law are presented for decision, namely: (1) Did the contract between Brashears and Marchbanks, evidenced by the letter above quoted, make them partners? and (2) Is Brashears estopped from denying Marchbanks' authority to execute the chattel mortgage? We shall consider these questions in their order.

It would seem that, with all the efforts which have been made through the years to formulate a definition of a partnership, some one of these attempts would have resulted in an accepted definition, but no such result has been achieved. It is said to be the consensus of opinion that the difficulty of formulating a definition which is at once accurate, comprehensive, and exclusive is insuperable. Note 18 L. R. A. (N. S.) 967. We shall therefore not undertake to suggest a definition, but shall be content with an application of established tests to the facts presented by this record.

There is an extended case note covering more than 140 pages in 18 L. R. A. (N. S.) beginning on page 963, dealing exclusively with the subject of the effect of an agreement to share profits to create a partnership, at the conclusion of which note the learned author confesses his inability to understand the basis of distinction in many cases. Of the oft-repeated quotation "profits as profits," he has to say that to use such expression "is to utter jargon." We believe that the opinions by courts of our state have shed much light on the meaning of that phrase. In the case of Friedlander v. Hillcoat (Tex. Sup.) 14 S. W. 786, 788, Judge Hobby uses this language: "That rule, which is regarded as the soundest, because supported by the better reason, and which embodies the true test, is: Where the interest in the profits arises from the fact that they are looked to as a fund affording compensation for the services of the person engaged in the business, and not as property to which he has a right, by reason of his being a part owner of the principal, he is in such case not a partner."

The same thought is clearly expressed by Justice Gaines in the case of Buzard v. Bank of Greenville, 67 Tex. 83, 2 S. W. 54, 58, 60 Am. Rep. 7, in this language: "Applying to the contract the unsatisfactory test of 'profits as profits,' previously commented on in this opinion, we think it will appear that he had no direct interest in the profits, and was therefore merely the employee of appellant. To illustrate this, let us suppose that, after purchasing a large number of cattle under the agreement, they had risen rapidly in value, so as to be worth largely more than their cost, and the expenses incident to the purchase. The cattle, in such case, would represent both the capital and profits. But would Pennington, in that event, have had any property in them? It is clear, we think, that he would not. His right, under the contract, was, upon a settlement of the business, to receive of Buzard compensation for his services, to be measured by one-half of the profits, if any."

Like distinctions are drawn in the cases of Emberson v. McKenna, 4 Willson Civ. Cas. Ct. App. § 94, 16 S. W. 419; Fink v. Brown (Tex. Com. App.) 215 S. W. 846; Scott v. Cassidy Southwestern Com. Co. (Tex. Civ. App.) 240 S. W. 1041; Pyron v. Brownfield (Tex. Civ. App.) 238 S. W. 725; Tanner v. Drake (Tex. Civ. App.) 47 S.W.(2d) 452; and Gard-

ner v. Wesner (Tex. Civ. App.) 55 S.W.(2d) 1104. This test, as applied to this case, is this: If Marchbanks had a property right in profits by virtue of his being a part owner of the principal, he was a partner, but, if he was not a part owner of the principal, and his only right in the profits was to look to them for compensation, he was not a partner.

Analyzing the contract in the instant case, the conclusion is readily reached that Marchbanks had no property right in the profits by virtue of his being a principal in the enterprise, and the owner of an interest in the subject of the partnership. The title to the cattle was to remain in Brashears; Marchbanks had no interest in them. He was not to be repaid for his expenses out of the sale of the cattle, unless one-half of the gross profits should be sufficient for that purpose. If the cattle, when sold, should bring less than the amount invested in them by Brashears, Marchbanks was not to be liable to Brashears for any portion of the loss. He could not at any time have maintained an action for accounting, settlement and dissolution of the partnership, because he had no property right in the cattle.

"A contingent interest in property, without right in the property of the firm, and without responsibility for losses, constitutes no partnership." Friedlander v. Hillcoat, supra.

It is believed that no substantial distinction can be drawn between this case and the Buzard and Friedlander Cases, and it therefore is ruled by them.

The case is to be distinguished from Edwards v. Buchanan, 14 Tex. Civ. App. 268, 36 S. W. 1022; Id. (Tex. Civ. App.) 51 S. W. 33, by the fact that all parties to that case were to share in the losses, and the further fact that the expenses of freight, feeding, and yard rent were to be paid out of the proceeds of the sale of the cattle. Buchanan had the right to look to the cattle for reimbursement; he was a principal in a joint venture, and had a property right in the subject of the partnership. The same distinctions obtain in the case of Giddings v. Harding (Tex. Com. App.) 267 S. W. 976.

Much reliance is placed by appellant upon Cothran v. Marmaduke, 60 Tex. 370; Kelley Island Lime & Transport Co. v. Masterson, 100 Tex. 38, 93 S. W. 427; and Freeman v. Huttig Sash & Door Co., 105 Tex. 560, 153 S. W. 122, 125, Ann. Cas. 1916E, 446.

It would seem that the case of Cothran v. Marmaduke is seldom cited but to be criticized. It has not been expressly overruled, but, as an authority, it has been whittled down almost to the vanishing point. But, however that may be, the opinions in the Buzard Case and the Fink Case, supra, so restrict its holding as to render it inapplicable to the facts in the instant case.

The case of Kelley Island Lime & Transport Co. v. Masterson, supra, is clearly distinguishable. In that case the principal of the partnership was a contract in which each party had an interest. The right possessed by each in that case to a share of the profits was by virtue of his interest in the principal.

The case of Freeman v. Huttig Sash & Door Co. did not involve the question of sharing profits as a test of partnership. That case in no wise conflicts with those above cited and relied upon, but the test above quoted is recognized as the proper one in the following language employed by Justice Phillips: "There existed by his tacit agreement a community of interests, the common enterprise, its operation for the joint account, and a right in the owner of each interest to share as a principal in its profits as such, which under the established rule in this state is a recognized test of the relation."

The trial court found that there was no intention to form a partnership, an important, though not controlling, element, that Marchbanks had no property right in the cattle, and that his right to one-half the profits was only as remuneration, or compensation, for services. The record justifies these findings, and supports the conclusion that no partnership existed between the parties.

■ Appellant's theory of estoppel, stated in its ninth proposition, is as follows: "It appearing that one party has permitted another to take possession and control of certain cattle for a long period of time, without attempting to give public or record notice of his ownership; and the party in possession procures a bank to make him a loan of new money on the strength of a mortgage on said cattle, the bank believing them to belong to second party; the first party is estopped to deny the validity of said mortgage to the extent, at least, of the new money advanced when the mortgage was given."

No authorities are cited in support of this proposition. Article 3999, R. S. 1925, provides that, under certain conditions therein detailed, possession of chattels for the space of two years may be relied upon by creditors and purchasers as evidence that the absolute property is with the possession, unless a reservation is declared by an instrument in writing duly recorded. If it be conceded that this article would otherwise have application to

the instant case, it cannot be availed of by appellant, because the possession had not remained with Marchbanks for two years prior to the execution of the mortgage. That statute declared a public policy, and, if mere possession is relied on as evidence of title in the possessor, then it must have remained for two years. When possession has remained for a shorter period than that, in order to work an estoppel against the real owner, facts must be proved establishing an estoppel in pais against him. The trial court has found the facts in the instant case do not establish any estoppel against Brashears, and the record clearly supports the finding. The most he did was to deliver his cattle to Marchbanks to be kept in Eastland county, where each of the parties reside. He was careful to have them branded with a brand of his own selection. Appellant's brief points out no evidence sufficient to work an estoppel, and we would not be justified in setting aside the conclusion of the trial judge on this issue. First National Bank of Canadian v. Jones (Tex. Civ. App.) 209 S. W. 468, and authorities there cited.

The assignments regarding the admissibility of certain testimony present no substantial questions, particularly in view of the fact that the case was tried before the court without the assistance of a jury. Clearly, if the court erred in any of his rulings, such errors were harmless, and it would serve no purpose to discuss the questions.

Affirmed.