WILEY T. ROGERS AND OTHERS v. SAMUEL S. NICHOLS AND OTHERS.

Where A contracted for the purchase of a storehouse and merchandise, and by articles of partnership with B and C, admitted them to equal interests with himself in the storehouse and merchandise, they stipulating that they would pay their proportion of the purchase money, it was held that the property thereby became partnership property of the firm.

Where one of two partners makes an absolute sale of his interest to the other, the property may be immediately taken in execution for the debts of the purchasing partner; but where the selling partner stipulates that he shall retain a lien on the partnership property to secure the payment of the partnership debts, and the agreement is duly recorded, or the separate creditor has actual notice, the lien, and remedy thereon, remain the same as where there is a dissolution without sale.

In respect to the rights of separate creditors of the individual partners, the law is that partnership effects cannot be taken and sold on execution to satisfy a creditor of one only of the partners, except it be to the extent of the interest of such partner, in the effects, after settlement of all accounts.

Where there is a seizure of partnership property, for the separate debt of one of the partners, upon petition for the account of the partnership, an injunction will be granted to restrain the Sheriff from the sale, until an account is taken, and the share of the partner ascertained. And in such cases it is the proper practice, to have an auditor appointed to state the account.

Appeal from Lavaca. Tried below before the Hon. Fielding Jones.

On the 5th day of Sept. 1855, William B. Davis purchased from M. B. and J. M. Bennett, trading as partners under the style of Bennett & Brother, lot No. 8, in block No. 1, in the town of Halletsville, and a stock of drugs, medicines, furniture, &c., then in the house erected on said lot. The agreement was in the form of an indenture; and it was stipulated therein, that Davis was to pay J. M. Bennett, for the said lot and its appurtenances, the sum of $1,250, as thereinafter provided, and said J. M. Bennett was to make to said Davis a good title; that the drugs, &c., should be invoiced immediately by said parties, at the cost prices, and as soon as the invoice should be completed, Davis

was to give the said M. B. and J. M. Bennett his notes, with good security, for said house and lot and said medicines, &c., as follows: three notes for one-third of the amount each, due respectively January 1st, 1856, 1857 and 1858, at ten per cent. interest from date.

On the next day, said Davis, as party of the first part, and Wiley T. Rogers and B. B. Walker, as party of the second part, all of said county of Lavaca, entered into articles of partnership for the purpose of buying, selling and compounding medicines, drugs, &c., in the town of Hallettsville, under the style of W. B. Davis & Co.; to commence that day and continue for five years. Said articles contained a stipulation as follows: The said parties of the first and second part do hereby mutually agree and covenant with each other, to bear equally the purchase of a stock of drugs, medicines, &c., recently bought by the said party of the first part, of Bennett & Brother, of the town of Halletsville, and also the purchase money of lot No. 8, in block No. 1, and appurtenances thereon, in said town and county, bought by the said party of the first part of John M. Bennett, the deed to which said lot is to be taken in the name of William B. Davis, Wiley T. Rogers and B. B. Walker. It is also agreed that the said party of the first part shall put into the said concern or partnership, the stock of drugs, medicines, &c., which he has now on hand in said town at cost, and the said party of the second part shall have the privilege of paying the said Bennett & Brother their share for the said stock, now on hand by the said party of the first part, in the first payment due said Bennett & Bro.

By agreement in writing, dated July 11th, 1856, Rogers and Walker bought from Davis fourteen and a half acres of land, part of the town tract of the town of Hallettsville, for the price of $2,000, as follows: $250 in a tract of land of ten acres adjoining said fourteen acres; $1,384 60 in the interest of said Rogers and Walker in the drug-store, house and lot, drugs, medicines, &c., owned and occupied by W. B. Davis & Co.; said R. & W. to make to said Davis a transfer of their interest in said drugs, medicines, &c., and a quit claim deed to their interest in the house and lot; Davis to release to Roger and Walker his interest in a certain lot or parcel of ground bought by said Davis and said Rogers and Walker from Dowling & Kelly; Davis to pay R. & W. $10 per month for all the time Henry Holtzclaw boarded with D. C. Bellows, since he has been clerking in said drug-store, and pay Holtzclaw all wages due him as clerk; Davis

to pay R. & W. $75 for a fire-proof safe now in the said drug-store ; Davis to secure said R. & W. against the payment of all outstanding liabilities of the said firm of W. B. Davis & Co.; and when a settlement of the private accounts of the parties should be made, if either indebted to the other, same to be settled by note ; and if R. & W. should be found, on settlement, to owe Davis anything, they reserve the right to pay the same to Dowling & Kelly on the balance due by said Davis for the first mentioned tract of land ; "and each of the parties hereto agrees and stipu-lates, that an express lien is and shall be reserved on all of the premises herein mentioned, to each of the contracting parties, until all the stipulations mentioned in this agreement have been entirely and fully consummated." Acknowledged by all the parties on the 20th of Oct., 1856 ; and recorded same day.

On the 12th of September, 1856, S. S. Nichols recovered a judgment in Lavaca District Court, against said W. B. Davis and one P. S. Nolan ; and on the 24th of same month, execution was issued thereon, and on the first of January, 1857, was levied on lot No. 8, block No. 1, in the town of Halletsville, and on all the drugs, medicines and merchandise in the storehouse on said lot, as the property of said Davis.

On the second of February, 1857, Rogers and Walker com-menced this suit to enjoin the sale of said property, under said execution, to pay the individual debts of Davis; alleging that the firm of W. B. Davis & Co. was greatly in debt, and had not assets enough to pay its debts ; that the property levied on was part of the property of said firm ; and that plaintiffs had a lien thereon, entitling them to have the same applied to the discharge of the partnership debts of W. B. Davis & Co. All the agreements, already recited, were made parts of the petition.

Defendants claimed that the firm of W. B. Davis & Co. had been dissolved in July, 1856, by a sale by Rogers and Walker to Davis; that the agreement of July 11th, 1856, was an arrange-ment merely to embarrass and delay the creditors of Davis ; and that the lot was in fact the individual property of Davis under his contract with Bennett & Brother.

The Court instructed the jury as follows :—

You will not, as in most cases submitted to you, find a verdict for the plaintiffs or defendants, but will find the two issues which I give you :—

1st. Whether the partnership, existing between Rogers and Walker and Davis, was dissolved by mutual agreement at and

46

before the levy of the executions, to wit: the 1st of January, 1857.

If you find this issue in the affirmative, you need do nothing more ; but if you find that the partnership still existed between them at that date, then you must find the following issue, to wit: Whether there was sufficient amount remaining after paying the partnership debts, to pay the amount claimed in the execution levied upon the property. If you find both these issues in the negative, say so.

The jury found that the partnership was dissolved by mutual consent, previous to the levy of the execution; and thereupon the Court rendered judgment for the defendants. Motion for new trial overruled, &c. It is not considered necessary to state the evidence, since there was no claim that it did not warrant the verdict, under the instructions given.

*J. H. Robson*, for appellants. We submit that the issue was an improper one to be left to the jury, because irrelevant and inapplicable to the case. If it was necessary to submit any special issue to the jury in the case, that special issue should have been whether or not there was an absolute sale of the property levied upon, by the plaintiffs, to W. B. Davis prior to the levy. Suppose the partnership had been dissolved prior to the levy, this would not affect the title to the partnership property, nor in any manner alter or change the course which the partnership property would take after dissolution. The rights of the creditors of the firm, and of the members of the firm, would be unaffected by the dissolution, so far as the disposition of the co-partnership property is concerned.

If the executory contract of sale between the plaintiffs and W. B. Davis could be construed into an absolute sale of the property of the firm, then the levy upon the property as the property of Davis, would have been valid so far as the plaintiffs are concerned. By the express provisions of that agreement, the plaintiffs retained a lien on all the property contracted to be sold to Davis, for the payment of all the debts of the partnership, as well as for a compliance by Davis with all the stipulations which he had therein covenanted to perform.

If the levy on the partnership property as the property of Davis can be construed to be a good and valid levy on the right, title and interest of Davis, in the property, then we say that it

should have been left to an auditor, appointed by Court, to make a final adjustment and settlement of all the partnership concerns, and to render an account of the condition of the same, in order to ascertain whether the partnership liabilities exceeded the assets and property of the firm ; and it was competent for the Court to restrain a sale by the Sheriff under the levy, until a final adjustment and settlement should first be made. On this point the Court is referred to Story on Partnership, p. 405–407 ; 4 Ves. 396, 397, 398 ; 15 Id. 559 ; 2 Swanst. 548 ; Eden on Inj. 31 ; 4 Conn. R. 540 ; 16 Johns. R. 106 ; 1 Story's Eq. Jur. p. 678.

*R. M. Tevis* and *J. J. Holt*, for appellees. Where a partnership was dissolved by one selling out to the other, as it was in this case, and the continuing partner afterwards became bankrupt, the joint creditors petitioned to have their claims paid out of the effects in his hands, which had belonged to him and his former partner. But the Court decided that the joint creditors had no equity attaching upon the partnership effects remaining in specie in his hands. (See *Ex parte* Ruffin, 6 Ves. 119.) It has been again held that the equity to apply partnership property to the payment of partnership debts only existed as between the partners themselves, and that it was competent for partners to say that equity should no longer exist ; that the sale of the stock in trade by one partner to another, put an end to this equity, and that the joint property thereafter became the separate property of the purchasing partner, and was not liable in his hands to the claims of the joint creditors, and the Court said if creditors do not like the arrangement, they may go to each of the partners and desire payment. (*Ex parte* Williams, 11 Ves. 3 ; also see 1 Freem. Ch. R. 309.) The case of Converse v. McKee, 14 Tex. R., upon which the appellants mainly rely to reverse this judgment, we think is not analogous, as in that case the sale did not take place until after the levy ; nor was there a dissolution of partnership until after the levy.

WHEELER, J. Although by the contract of the 5th of September, 1855, Davis alone was to become the purchaser of the house and lot, and drugs, medicines, &c., mentioned in the agreement ; yet, by the contract of partnership of the 6th of September, between himself and the plaintiffs, they all joined in the

purchase for the purposes of the partnership. The property thereby became the partnership means for the purpose of carrying on the business of the firm. The purchase was on their joint account, and the property became partnership property. Although a purchase be on separate, and not on joint account, yet if the interests of the purchasers are afterwards mingled, with a view to a joint sale, a partnership exists from the time that the shares are brought into a common mass. (3 Kent, Com. 26 ; 8 Serg. & Rawle, 103.)

By the agreement of the 11th of July, 1856, the plaintiffs contracted to convey to Davis their interest in the partnership property, and he contracted to secure them against the liabilities of the firm ; and for the performance of these and other stipulations, they expressly retained a lien upon the property. This agreement, if consummated, operated as a dissolution of the partnership. It completely severed the interests of the partners, and gave them distinct rights and remedies. If the plaintiffs had not retained a lien upon the property, it would undoubtedly have been liable to be taken in execution in satisfaction of the individual debts of Davis, free from any claim of theirs or their joint creditors. (3 Kent, 65 ; 6 Vesey, 119 ; 11 Id. 3, 5 ; Story on Part. Sec. 358.) But it was certainly competent for them to retain such lien. They had the power of absolute disposition of their interest, and they, of course, could make a qualified disposition. Having retained a lien upon the property, they must have a remedy to enforce it ; and it would seem that they must have the same remedy, which they would have during the partnership or upon its dissolution, without a sale of the partnership effects ; for upon such dissolution each partner has a lien upon the partnership effects, as well for his indemnity as for his proportion of the surplus. (3 Kent, 65.) Where, upon a dissolution and alienation of the property, the lien is retained, the rights and remedies of the partners, to the extent of the interest thus retained, must remain unchanged. In respect then to the rights of separate creditors of the individual partners, the law is, that partnership effects cannot be taken and sold on execution to satisfy a creditor of one only of the partners, except it be to the extent of the interest of such separate partners in the effects, after settlement of all accounts. " In cases of this sort (says Judge Story) the real situation of the parties, relatively to each other, seems to be this : The partnership property may be taken in execution, upon a separate judgment and execution

against one partner; but the Sheriff can only seize and sell the right of the judgment partner therein, subject to the prior rights and liens of the other partners and the joint creditors therein. By such seizure the Sheriff acquires a special property in the goods seized; and the judgment creditor himself may, and the Sheriff, also, with the consent of the judgment creditor, may file a bill against the other partners for the ascertainment of the quantity of that interest, before any sale is actually made under the execution. The judgment creditor, however, is not bound, if he does not choose, to wait until such interest is so ascertained; but he may require the Sheriff immediately to proceed to a sale, which order the Sheriff is bound by law to obey. In the event of a sale, the purchaser at the sale is substituted to the rights of the execution partner, *quoad* the property sold, and becomes tenant thereof, and he may file a bill, or a bill may be filed against him by the other partners, to ascertain the quantity of interest which he has acquired by the sale." (Story on Part. Sec. 263.) And the better opinion seems to be, that in cases of seizure of the joint property for the separate debt of one of the partners, upon a bill for the account of the partnership, an injunction will be granted to restrain the Sheriff from the sale until the account is taken, and the share of the partner ascertained. (Id. 264.)

It then was the right of the plaintiffs in this case, to have an auditor appointed to take an account, or to go into proofs upon the trial, to ascertain the share of the partner for whose debt the execution was levied. If the plaintiffs' lien was reserved *bona fide*, and if, as they allege, the partnership effects were not sufficient to satisfy the partnership debts, and the other partner would have, upon a final adjustment of the accounts, no interest in the partnership effects, the sale by the Sheriff ought to be restrained. But if, as the defendant alleges, the sale by the plaintiffs to the other partner was absolute, and the lien reserved was only colorable and for the purpose of defrauding creditors, then, unquestionably, the property was liable to be taken and sold upon the defendant's execution. These, then, were the issues which, under the pleadings and proofs, should first have been submitted to the jury.

But the issue first submitted by the Court was, whether the partnership was dissolved by mutual agreement, before the levy of the execution. And the jury were instructed that if they found the affirmative of this issue, they need not inquire further.

And upon their so finding, the Court gave judgment for the plaintiffs. This was error. The mere dissolution of the partnership did not have the effect to subject the property to be taken in execution for the separate debt of one partner. The partnership creditors must first be satisfied; unless there was a transfer of the right of property absolutely to the other partner. And although there was an agreement to make such transfer, yet the reservation of a lien, if *bona fide*, entitled the plaintiffs to interpose for their own protection, and enjoin the sale.

The Court may have proceeded upon the ground that, as the sale under the execution would only pass the interest of the separate partner, in the property of the partnership, no harm would thereby be done to the other partners, and therefore they had no right to interpose by injunction to restrain the sale. And so it was formerly held at Common Law, and such appears to have been the opinion of Chancellor Kent. (2 Johns. Ch. R. 548, 549.) But, as Judge Story justly observes, if the debtor partner will have, upon final settlement, no interest in the partnership funds, and if the other partners have a lien upon the funds not only for the debts of the partnership, but for the balance ultimately due to them, the sale may most materially affect their interest. For it may be very difficult to follow the property into the hands of the various vendees; and the lien of the other partners may be displaced or other equities arise by intermediate *bona fide* sales of the property to purchasers without notice; and the partners may have to sustain all the chances of supervening insolvencies of the immediate vendees. To prevent multiplicity of suits, and irreparable mischief, and to protect and insure the lien of the partners, it seems entirely proper in such cases to restrain any sale by the Sheriff. And such appears to be the established doctrine of the Courts of Equity. (Story on Part. 264, and numerous cases cited.) We conclude that the Court erred in restricting the inquiries of the jury to the two issues as to the dissolution of the partnership before the levy of the execution, and the solvency of the partnership; and in giving judgment for the plaintiff upon the finding of the affirmative of the first of these issues. The judgment is therefore reversed, and the cause remanded for further proceedings.

Reversed and remanded.