ROBERTS et al. v. NUNN. (No. 640.)

(Court of Civil Appeals of Texas. Amarillo. June 27, 1914. Rehearing Denied Oct. 10, 1914.)

1. PARTNERSHIP (§ 227*)—MANNER OF BECOMING.

Where three persons entered into an agreement to purchase a tract of land for resale and to share the expenses and profits, if any, in proportion to their respective shares, defendant, who purchased the interest of one of the three original parties, became a partner, where he acquiesced in the arrangement, and so was liable for his share of the expenses, for a partnership need not be created by express contract.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 143, 473–475; Dec. Dig. § 227.*]

2. PARTNERSHIP (§ 52*)—RELATION — PRIMA FACIE EVIDENCE.

An agreement to share profits and losses of a venture is merely prima facie evidence of partnership, and may be rebutted by proof of another agreement.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 75, 79; Dec. Dig. § 52.*]

3. PARTNERSHIP (§ 58*)—DISSOLUTION.

A partnership is at an end when the particular transaction or venture for which it was organized is concluded.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 83; Dec. Dig. § 58.*]

4. PARTNERSHIP (§ 243*) — DISSOLUTION — DEATH OF PARTNER.

The death of one member of a firm dissolves the partnership and casts upon the survivors the duty to wind up its affairs.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 509, 510, 512, 513; Dec. Dig. § 243.*]

5. PARTNERSHIP (§ 321*)—ACCOUNTING — ACCRUAL OF RIGHT OF ACTION.

Plaintiff, who was a member of a firm, engaged to deal in land, paid off a firm debt two years after the last of the land had been sold, which sale occurred shortly after the dissolution of the firm by the death of one of the partners. Rev. St. 1911, art. 5688, subd. 3, imposes a four-year limitation upon actions by one partner against his copartner for settlement of partnership accounts. Held, that plaintiff could, at any time within four years after payment, sue his copartner to compel him to pay his proportionate share, for the firm, though dissolved by the death of one of the partners and the closing out of its business, continued in legal contemplation until payment of debts, and plaintiff's right of action to compel a settlement did not accrue until his payment.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 742–745; Dec. Dig. § 321.*]

Appeal from District Court, Potter County; Jas. N. Browning, Judge.

Action by W. S. Roberts and others against G. J. Nunn. From a judgment for defendant, plaintiffs appeal. Affirmed in part, and in part reversed and remanded.

Gustavus & Jackson, of Amarillo, for appellants. Synnott & Underwood and S. E. Fish, all of Amarillo, for appellee.

HUFF, C. J. Appellant W. S. Roberts, joined by Mrs. J. V. Templeton, formerly Mrs. S. V. Gist, for herself and as next friend of the minor children of herself and deceased husband, brought suit against G. J.

Nunn, in which they allege that on June 12, 1906, W. S. Roberts, S. V. Gist, and L. A. Wells entered into an agreement to purchase 2½ sections of land in Potter county, for the purpose of resale and speculation, by which agreement they agreed to share in the profits and losses in handling the land in proportion to their respective interests, and that they were partners in the transaction, and that on June 22, 1906, L. A. Wells sold out his interest in the partnership to G. J. Nunn, and that on the 26th day of April, 1907, S. V. Gist died, etc. He then sets out the management, sale, distribution of part of the proceeds, and certain items which he claims that Nunn is due the partnership and due the estate on contribution, and that the appellee claims certain offsets, etc. The appellee answered by general and special exceptions, plea of two and four year statutes of limitations, denying owing any of the sums of money set out, and denied partnership. The findings of the trial court will sufficiently particularize the issues, without further mentioning them in the pleadings. The court found as follows:

"Findings of Fact.

"(1) That on June 12, 1906, plaintiff, W. S. Roberts, L. A. Wells, and S. V. Gist, jointly purchased of James Free, John Free, and Stanley Free surveys 102, 134, and the east one-half of survey 158, in block 2, A. B. & M., lands in Potter county, Tex., paying therefor the sum of $8,120 cash, and assumed the payment of six outstanding vendor's lien notes, aggregating about $14,280, against said lands, which notes were held by one R. L. Chanslor. The said Roberts was to have an undivided one-half interest in said lands, and the said Wells and Gist were to each have an undivided one-fourth interest therein, and, as among themselves, they were to be held liable on the assumed notes in proportion to their respective interests in the lands.

"(2) That said lands were purchased by said parties for the purpose of speculation; that the same were to be resold, and the parties were to share in the expenses, profits, and losses in the handling the property, in proportion to their respective interests in the lands. And after they became the owners thereof they agreed among themselves and fixed prices for which each tract or part of tract should be sold, etc., and each party was to seek purchasers, and a 5 per cent. commission was to be allowed to any one of them finding a purchaser. But the land or any part of it should not be sold for a less price than that agreed upon, except by consent of all the interested parties.

"(3) On June 22, 1906, L. A. Wells sold and conveyed his undivided one-fourth interest in said lands to the defendant G. J. Nunn for the consideration of $2,000 cash and the assumption on his part of the outstanding vendor's lien notes held by said Chanslor against the land. This sale and conveyance was made without Wells or Nunn consulting Roberts and Gist, and no new express agreement, as to the handling and sale of these lands, was entered into by Roberts, Gist, and Nunn, after Nunn became the owner of Wells' interest. But, soon after Nunn bought out Wells, he (Nunn) and Roberts together discussed the said agreement between Roberts, Gist, and Wells, and he made no objection to it, and the subsequent sales were afterwards made substantially at prices and terms agreed upon between Roberts, Gist, and Wells.

"(4) Before any part of these lands were sold, one of the Chanslor notes matured and was paid off by Roberts, Gist, and Nunn; each contributing such part thereof as his interest in the land represented.

"(5) On January 4, 1907, plaintiff W. S. Roberts with the assistance of other outside parties, procured a purchaser for section 102, in the person of A. C. Neff, for a cash consideration of $11,840. From this sum some minor expenses were paid; $640 was paid as commissions to W. S. Roberts and those assisting him in making the deal, enough was paid on the Chanslor notes to procure from him a release of his vendor's lien on said section, and the remaining sum was divided between Roberts, Gist, and Nunn, proportionately to their respective interests in the land. Conveyance was duly executed by Roberts, Gist, and Nunn to A. C. Neff for said survey 102, and the transaction closed. Roberts made the deal with Neff, received and disbursed the cash received, and rendered statement of same to Gist and Nunn, and they made no objection to the same.

"(6) On February 20, 1907, Roberts and Gist sold and conveyed their undivided three-fourths interest in section 134 to defendant G. J. Nunn, for the consideration of and at the rate of $19 per acre, for their 480-acre interest in the survey, making the aggregate price the sum of $9,120, thereby placing the entire title to the section in defendant Nunn. Included in said $9,120 was the assumption by Nunn of three-fourths ($4,575) of the sum of $6,100 owing to Chanslor by the vendor's lien notes held by him against said section, for the payment of which $6,100 lien, Roberts, Gist, and Nunn were all jointly liable, but, as between themselves, Roberts was liable for $3,050 thereof, Gist for $1,525, and Nunn for $1,525. Nunn was only able to pay Roberts and Gist, at that time, the sum of $1,515 cash on the trade, and therefore not able to then liquidate the $6,100 owing on the Chanslor lien. Roberts and Gist were desirous of being relieved of their liability on the Chanslor notes for said $6,100 lien, and to consummate the trade, and at the same time accommodate Roberts and Gist, Nunn paid them $1,515 cash on the trade, and executed two notes for $1,515 each, payable February 24, 1909 and 1910, respectively, and one note for $3,060 payable February 24, 1911, all signed by G. J. Nunn and payable to the order of W. S. Roberts and S. V. Gist, and Nunn also executed a deed of trust on the section to secure payment of said several notes, and in this trust deed gave priority of payment to the said two notes of $1,520 each, and said note for $3,060. These last-mentioned notes, aggregating $6,100, were transferred, by Roberts and Gist, over to R. L. Chanslor, in order to release the land of his lien and to relieve Roberts and Gist of their liability on the Chanslor notes against said section of land. The said several notes executed by Nunn to Roberts and Gist included the $1,525, for which Nunn was already liable to Chanslor, as his part of the $6,100 lien, held by Chanslor against the survey; and, after the Chanslor lien was so taken up, Nunn became the sole and only obligor for the lien covered by his said notes and deed of trust. Roberts and Gist divided the cash and the two first notes of $1,515 each between themselves, and that closed up the sale of their interest in the survey to Nunn.

"(7) On February 25, 1907, Roberts, Gist, and Nunn sold and conveyed to J. T. and M. R. Clark the southwest one-fourth of the southeast quarter of section 158, being 40 acres, for the consideration of $1,000, a part of which was paid in cash and the balance in vendor's lien notes on the tract sold. Roberts procured this trade. For the deferred payments the Clarks executed their vendor's lien notes, one of which notes was made payable to the order of W. S. Roberts in a sum equal to one-half of

the deferred payment, and the remaining half of the deferred payments was divided equally and the notes executed therefor, payable to Gist and Nunn, respectively. Roberts received the cash and notes given for his 40 acres, and after deducting the amount of an expense bill, made by him in accomplishing the sale, and his commissions for making it, Roberts reserved to himself one half of the balance of the cash received and the note made payable to him, and the remaining half of the cash he divided equally, paying one part to Gist and the other to Nunn, and also delivered to them their respective notes for deferred payments, and the entire deal was closed satisfactorily to all parties concerned.

"(8) On the 9th day of July, 1907, Roberts, Gist, and Nunn sold 80 acres, being the north one-half of the southeast quarter of section 158, to R. M. Sooter, for the sum of $2,000, a part of which was paid in cash and the balance in vendor's lien notes, payable separately to Roberts, Gist, and Nunn, in proportion to their respective interests in the land. Roberts procured this purchaser, and the consideration was delivered to him. Out of the cash received on this sale, Roberts paid enough on the Chanslor notes to secure a release of that lien on the tract sold, settled the expenses incurred in making the sale, reserved to himself his commissions, and divided the cash and notes between himself and Gist and Nunn in the same manner as was done in the sale of the 40 acres to the Clarks, and thus closed the entire deal satisfactorily to all the parties concerned.

"(9) On the 10th day of September, 1907, Roberts, Gist, and Nunn sold and conveyed to Nunn and Boetcher 40 acres, same being the southeast one-fourth of the southeast quarter of said section 158, for the consideration of $1,600, a part of which was paid in cash and the balance in vendor's lien notes, payable separately to Roberts, Gist, and Nunn, in proportion to their respective interests in the land. Roberts procured these purchasers, and the consideration was delivered to him. Out of the cash received on the sale, Roberts paid enough on the Chanslor lien notes to secure a release of that lien on the tract sold, settled the expenses incurred in making the sale, reserved to himself his commissions, and divided the cash and notes for deferred payments between himself and Gist and Nunn, as was done in the sales to the Clarks and Sooter, and thus closed the entire deal satisfactorily to all the parties concerned.

"(10) On April 3, 1908, Roberts, Gist, and Nunn sold and conveyed to D. J. Muncey 160 acres, same being the northeast quarter of said section 158, for the consideration of $4,000, a part of which was paid in cash and a part in vendor's lien notes, payable separately to Roberts, Gist, and Nunn, in proportion to their respective interests in the land, as had been done in previous sales to other parties. Roberts also procured this purchaser, and the consideration was delivered to him as in the other sales. This being the last tract of land, jointly owned by Roberts, Gist, and Nunn, the trade was so made with the purchaser, Muncey, that he (Muncey), in addition to the cash and notes executed and delivered by him to said Roberts, Gist, and Nunn, assumed payment of the balance owing to Chanslor on the vendor's lien notes held by him against the land. Before consummating the trade with Muncey, Roberts made inquiry of Chanslor of the amount of the balance owing to him on his said vendor's lien notes, and Chanslor informed him that it amounted to the sum of $1,506.85, which Muncey assumed and became obligated to pay to said Chanslor, and the deed to Muncey so stated. All the parties concerned, at that time, thought and accepted that said $1,506.85 was the balance and correct amount owing on said notes to Chanslor. Thereupon Roberts, Gist,

and Nunn settled up and divided among themselves the cash and vendor's lien notes received on this Muncey deal, according to their respective interests in the land, as had been done in previous sales, and to the entire satisfaction of the interested parties, and their joint dealings were at an end, or would be when Muncey paid the amount to Chanslor which he had assumed to pay.

"(11) Finding that he was in error in stating that $1,506.85 was the amount owing him on the vendor's lien notes against the said lands at the time of said sale to D. J. Muncey, he (Chanslor) on November 3, 1910, notified W. S. Roberts of his mistake, stating that it came about by his giving only the principal sum due, to wit, $1,506.85, and in doing so he had overlooked and omitted to compute the interest on said notes, and demanded payment of same of Roberts, and threatened to institute suit for the collection of the sum claimed and to foreclose his vendor's lien on the premises sold to Muncey. The notes, at the time, being out of the way, Roberts, in order to avoid a law suit, paid Chanslor the sum of $1,000; that amount being approximately the balance claimed by Chanslor. S. V. Gist having died previous to said time, Roberts called on his heirs and defendant·Nunn for contribution of their proportionate part of said $1,000 so paid by Roberts. The part owned by the heirs of Gist was adjusted and settled with Roberts, but he failed to get to a settlement with defendant Nunn. In February, 1912, Muncey paid Chanslor the principal and interest he had assumed, and afterwards, in the same year, Chanslor refunded to Roberts the sum of $262, which reduced the $1,000 paid by Roberts to the sum of $738, one-fourth of which is properly chargeable to defendant Nunn, and which sum he has never paid.

"(12) Each and all the deeds to purchasers of these lands were jointly executed by W. S. Roberts, S. V. Gist, and G. J. Nunn, in their individual capacities and names. And no partnership books or joint running account were attempted to be kept by the parties, or either of them, on account of their joint interests, but each transaction in the sale of any part of said jointly owned lands, upon the completion of such sale, was immediately adjusted, settled, and closed up between Roberts, Gist, and Nunn.

"(13) This suit was originally filed August 22, 1913."

[1] The findings of fact by the trial court, paragraphs 2 and 3, together with the other findings, constitute an agreement of partnership in the business of buying and selling the land in question. The facts, as found by the court, show that Nunn purchased the interest of Wells, assuming his obligation in the partnership, and, when told of the original agreement between Roberts, Gist, and Wells, made no objection to it, and all subsequent sales were made in accordance with that agreement, and appellee Nunn participated therein. Having so acquiesced and participated, we think he thereby became a party to the agreement, which clearly brings him under the rule announced by Judge Phillips in the case of Freeman v. Huttig Sash & Door Co., 105 Tex. 560, 153 S. W. 122. The contention of appellee in this case appears to be because the parties to the agreement did not in terms designate the agreement as a partnership; therefore there was no partnership entered into. A partnership is created by contract, either express or implied. Under the modern theory, the ex-

istence of partnership is largely treated as a question of fact.

"But, when the terms of the agreement of the facts are all admitted, the question as to whether or not a partnership exists is a question of law. In determining the existence of a partnership, it is well settled that the true contract and intention of the parties is looked to, at least as between themselves, in order to establish such a relation. This has led to a general statement that, as between the immediate parties, a partnership is formed and exists only by their intention to form such relationship; but the law looks to the substance and not the form. It is not what the parties call their relation that determines, but what they actually agree upon in their contract. It is the intent to do these things which constitutes a partnership that should determine whether or not that relation exists between the parties. * * * The law on this branch of the subject has been summarized as follows: The question is one of intention, and a contract of partnership will no more be created by the court against the will of the party than will those of any other character. One may not make a contract of partnership, and, calling it an agency, have it treated as such by the court, for, when the facts are known, the law fixes the legal consequences which flow from them. Neither may one secure the benefits of a relation of a partner and by contract secure immunity from the liabilities as against creditors; but, when the contract is susceptible of the construction put upon it by the parties at the time it was made, such construction will be accepted by the court as the true one." 1 Elliott on Contracts, § 480; 2 Page on Contracts, § 937, p. 1470; Gilmore on Partnership, p. 58; 22 Am. & Eng. Enc. of Law, pp. 24, 25, 26.

[2] The ultimate fact to be shown is common ownership or joint proprietorship of the business and its profits, and an agreement to share both the profits and losses or expenses of the business is held by some courts to be conclusive evidence of partnership. Of course, if there are other facts or circumstances in the transaction which show the parties did not intend to create a partnership in a legal sense, none is created. It has been said:

"The true rule is that such agreement (to share profits and losses) is merely prima facie evidence of partnership."

The cases in our courts appear to sustain the latter proposition. In the case of Kressler v. First National Bank of Yoakum, 21 Tex. Civ. App. 98, 51 S. W. 62, Judge Williams, speaking for the court, said:

"It is charged that they conducted the business under the name of Wangenman, and shared in the profits and losses arising. To constitute a partnership, an agreement, express or implied, is essential. There is here no positive allegation of the existence of such agreement. The averment that they shared the profits and losses might be true without the existence of an agreement or understanding by which they become partners. Such sharing might take place without any agreement or partnership. The allegation is undoubtedly defective in that it fails to allege directly and positively the existence of the partnership, or, otherwise, all of the facts essential to constitute it. The facts stated, if proven, would be sufficient, prima facie, to raise an inference of the existence of the partnership, because from them the agreement would be inferred. But, in pleading, the fact to be established should be directly averred, and not merely suggested as an inference

from other facts stated." Edwards v. Buchanan, 14 Tex. Civ. App. 268, 36 S. W. 1022; Cothran v. Marmaduke, 60 Tex. 370; Goode v. McCartney, 10 Tex. 195; Stratton v. O'Connor, 34 S. W. 158; 1 Elliott on Contracts, § 481.

In this case the court finds the lands were purchased for speculation or resale, with the agreement that the parties share in the profits and expenses. The evidence was stronger than the court's findings. The parties all admit owing the sum of $14,000, which was to be repaid out of the sale, and that they made this joint venture in the purchase of the land for the purpose of resale. In doing so, they agreed on the price for which it should be sold and the commissions to be paid, and, after deducting the expenses of sale and the amount due on the land, they were to divide the profits among themselves in proportion to their respective interests. In selling the land they divided the profits and observed the terms of their agreement; appellee Nunn participating therein. None of the land had been sold prior to Nunn's purchase, but all was sold and divided according to agreement after he became a party thereto. It is insisted that appellee was only a co-owner in the land and was not a partner. The rule is if property is purchased for resale, under agreement to divide the profits from the transaction, the purchasers are partners. 22 Am. & Eng. Encyc. of Law, p. 54, note 5. The object of the partnership is gain. It is a business relation, and the purpose of every business of that character is gain. Spencer v. Jones, 92 Tex. 516, 50 S. W. 118, 71 Am. St. Rep. 870; Rogers v. Nichols, 20 Tex. 719; Kelley v. Masterson, 100 Tex. 38, 93 S. W. 427. The first assignment of error is sustained.

[3-5] The second assignment, to the effect that the court erred in holding that the sale to Muncey April 3, 1908, was the end of all the partnership transactions, and the third assignment, to the effect that the court erred in holding that the payment made by Roberts November 3, 1910, upon the notes assumed by Nunn, Roberts, and Gist, was barred by the statute of limitations. Under the facts of this case we think the assignments correct. As will be seen from the trial court's findings, the three parties assumed the payment of $14,280 due on the land to one Chanslor. In making the sale to Muncey for the last 160 acres of the land, he assumed to pay, of that indebtedness, $1,506.85, leaving a balance due Chanslor on the indebtedness by the three partners $738, one-fourth of which was properly chargeable to Nunn. Roberts paid this sum out of his individual money November 3, 1910, and seeks contribution for the sum in his petition for accounting. This suit was filed August 22, 1913; the suit was brought two years and nine months after Roberts paid off the indebtedness, and five years and four months after

the last land was sold. Gist died April 26, 1907, and all deeds after that date were executed by Mrs. Gist, as community administratrix, in connection with the other parties to the contract. A partnership is at an end when the particular transaction or venture for which it was organized is completed. The sale of the land in this instance was a transaction to be accomplished, but it was also a part of the venture to sell for a profit. This could not be until the obligation of the copartners had been fully paid off and discharged. This was as much part of the partnership transaction as any other. The death of Gist dissolved the partnership, but left the duty of the survivors to wind up its affairs. This they undertook to do by selling the land and paying the obligations of the firm out of the partnership property. It will be noted that several tracts of land were sold after the death of Gist.

If we are correct in holding the parties to the agreement partners, article 5688, R. S. 1911, subd. 3, is the statute of limitation which will govern this case. Suit thereunder must be brought within four years after the cause of action shall have accrued in "actions by one partner against his copartner for a settlement of the partnership accounts; * * * and the cause of action shall be considered as having accrued on a cessation of the dealings in which they were interested together." A dissolved partnership continues in force in legal contemplation for the purpose of winding up its affairs until a full settlement has been had and all outstanding liabilities have been met. Brown v. Higginbotham, 5 Leigh (Va.) 583, 27 Am. Dec. 618; Long v. Garnett, 59 Tex. 229; 22 Am. & Eng. Enc. of Law, 211 (2), p. 214 (4). The power remains in each partner after dissolution to pay the firm's debts. Authorities, supra; Gilmore on Partnership, 347; Bates on Partnership, § 949; Houser v. Irvine, 3 Watts & S. (Pa.) 345, 38 Am. Dec. 768. In that capacity they are quasi trustees for the partnership (Altgelt v. Alamo National Bank, 98 Tex. 252, 83 S. W. 9), and as such there is not a "cessation of the dealings in which they were interested" until the affairs are wound up. The cause of action then accrues, and the suit must be brought within four years thereafter. Until the dealings of the parties are finally concluded and the obligations of the partnership paid, and an accounting, and full settlement had, limitation does not begin to run. The Supreme Court held, in the case of Morris v. Nunn, 79 Tex. 125, 15 S. W. 220, that for items due an individual partner, but intermingled with partnership accounts, the four years' statute of limitations as to such applied from the cessation of the dealings. A like holding was made in Peel v. Giesen, 21 Tex. Civ. App. 334, 51 S. W. 44. In the case of Bluntzer v. Hirsch, 32 Tex. Civ. App. 585, 75 S. W. 326, it is held that the statute begins to run from the last item in an account of partnership dealings, and that the petition in that case was not specific enough to show a continuation of the partnership agreement until a later date. Wylie v. Langhorne, 45 Tex. Civ. App. 618, 101 S. W. 527, was a suit on a debt due by an individual partner to the partnership for which he was sued by the wife and heirs of the deceased partner, and also for the amount of claims alleged to have been collected by him after the death of the partner. It was there held the four years' statute applied. No holding is made as to when it accrued. The partnership, for the purpose of settlement, was in legal contemplation in existence after the dissolution.

The item here sued for by appellant was an outstanding obligation against the partners, of which appellee owed one-fourth. The appellant had no cause of action against appellee until he paid it. After he did so, he brought suit within less than four years, alleging the winding up of the partnership. We think the four years' statute applies, and that the cause of action accrued at the date of the last item paid in winding up the partnership. Assignments Nos. 2, 3, 4, and 6 will be sustained. We will not discuss the question of subrogation. Chanslor, when Roberts paid the notes, transferred them to him. Appellant contends that by the transfer, as well as in equity, he was subrogated to all the rights of Chanslor under the vendor's lien notes. Without suggesting our view upon what the rights of the parties are or ought to be with reference to subrogation, we simply call attention to the case of Sands v. Durham, 98 Va. 392, 36 S. E. 472, 54 L. R. A. 614, and notes to that case, and the case of Faires v. Cockerell, 88 Tex. 428, 31 S. W. 190, 639, 28 L. R. A. 528.

The fifth assignment is overruled. The item of $1,525 sued for by Roberts is the sum due him for one-fourth of $6,100, which Roberts alleged he paid Chanslor to release the vendor's lien in his favor, on section 134. The trial court's findings of fact (paragraph 6) concludes the appellant upon this item. The evidence is sufficient to support the findings of the court thereon. The other assignments have been sufficiently noticed in what has heretofore been said by us.

The judgment of the court will be affirmed, except as to the item of $738. Judgment will be here rendered for appellant against appellee Nunn for one-fourth of $738, with interest thereon from the 3d day of November, 1910, at the rate of 6 per cent. per annum, and that appellee pay all costs of this appeal and costs in the court below.

Affirmed in part, and reversed and rendered in part.