MARY D. WALSH (MRS. F. HOWARD WALSH), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WM. FLEMING, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WM. FLEMING, TRUSTEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 701, 703, 704. Promulgated June 24, 1946.

*Harry C. Weeks, Esq.,* for the petitioners.
*J. Marvin Kelley, Esq.,* and *John W. Alexander, Esq.,* for the respondent.

OPINION.

BLACK, *Judge*: There is one issue remaining to be decided in these proceedings: Does the death of a partner in a partnership cut short the "taxable year of the partnership" as that phrase is used in section 188 of the Internal Revenue Code,[1] as far as the surviving partners are concerned? As indicative and controlling for all, we may consider specifically only petitioner Mary D. Walsh, hereinafter sometimes referred to as "petitioner," and the partnership of which her husband was a member, the Elliott-Walsh Oil Co., hereinafter sometimes referred to as the partnership. Petitioner and her husband returned their income in accordance with the community property law of Texas. Petitioner filed her return on the calendar year basis and the partnership filed its return on the basis of a fiscal year ending May 31. In

---

[1] SEC. 188. DIFFERENT TAXABLE YEARS OF PARTNER AND PARTNERSHIP.

If the taxable year of a partner is different from that of the partnership, the inclusions with respect to the net income of the partnership, in computing the net income of the partner for his taxable year, shall be based upon the net income of the partnership for any taxable year of the partnership (whether beginning on, before, or after January 1, 1939) ending within or with the taxable year of the partner.

petitioner's return for the calendar year 1939 she included her share of the partnership's income for the fiscal year ended May 31, 1939. This was proper and in accordance with section 188, *supra*, and there is no question here concerning such income. In petitioner's return for the calendar year 1940 she included her share of the partnership's income for the fiscal year ended May 31, 1940. Petitioner contends that this was proper and in accordance with section 188. The respondent contends that, because of Elliott's death on July 7, 1939, the "taxable year of the partnership" referred to in section 188 that would have normally ended on May 31, 1940, was cut short and in fact and in law ended on July 7, 1939; that this "taxable year of the partnership" which began on June 1, 1939, and ended on July 7, 1939, was within petitioner's taxable calendar year 1939; and that petitioner's share of the income of the partnership for this short "taxable year" should also be included in petitioner's return for her taxable year ended December 31, 1939. The parties are in entire agreement upon the figures necessary for a determination of income upon either petitioner's theory or respondent's theory, and they agree that they will be supplied in the computation to be had under Rule 50.

The respondent relies upon *Guaranty Trust Co. of New York* v. *Commissioner*, 303 U. S. 493. That decision is not controlling here. If Elliott had also filed on the calendar year basis, the respondent's contention herein, as far as Elliott's tax liability would be concerned, would be in accord with the holding of the Supreme Court in the *Guaranty Trust Co.* case. We express no opinion as to what effect section 134 of the Revenue Act of 1942 might have on the determination of Elliott's final tax liability, as his case is not before us. Because of the necessity of the situation, there are special rules for determining the income in respect of decedents that do not apply to living taxpayers. The Supreme Court recognized this in the case of another decedent who was also a member of a partnership at the time of his death in the case of *Helvering* v. *Enright's Estate*, 312 U. S. 636, wherein the Supreme Court in footnote 9 said "We do not consider or decide whether this accounting for a fractional year may affect the individual returns of surviving partners." Petitioner's husband herein is a surviving partner.

Both petitioner and respondent agree that Elliott's death dissolved the partnership.[2] The partners here had no agreement to the contrary. The respondent in his brief states his position as follows:

After the death of R. A. Elliott, Hardesty-Elliott Oil Company and Elliott-Walsh Oil Company continued to do business. It is the respondent's position

---

[2] In *Johnson* v. *Smith*, 35 S. W. (2d) 798, the Court of Civil Appeals of Texas said: "The law is well settled that the death of one partner, in the absence of an express agreement to the contrary, dissolves the partnership. 20 R. C. L. 989; 47 C. J. 1040; *Roberts* v. *Nunn* (Tex. Civ. App.) 169 S. W. 1086."

that such continuance was by new and distinct co-partnerships, and not by the same business entities for the purpose of liquidation.

The evidence here is clear that after Elliott's death there were no new partnerships created. Although the old partnerships were dissolved by Elliott's death, they were not terminated. *Dial* v. *Martin* (Tex. Civ. App.), 37 S. W. (2d) 166, 177. The business being conducted by the partnerships had to be wound up by the surviving partners and an accounting made to the heirs and personal representatives of the deceased partner. *Dial* v. *Martin, supra.* In that case the court, among other things, said:

> Where a partnership is dissolved by the death of one of the partners, the surviving partner or partners have the right, and, moreover, it is their duty, to wind up the firm's business, and he is, in the eyes of the law, a trustee of the firm assets for that purpose, and as such trustee is entitled to the exclusive possession of all firm assets. *Gaut* v. *Reed Bros. & Co.*, 24 Tex. 46, 76 Am. Dec. 94; *Crescent Ins. Co.* v. *Camp*, 64 Tex. 521; *Shivel & Stewart* v. *Greer Bros.*, 58 Tex. Civ. App. 115, 123, S. W. 207; *Amarillo National Bank* v. *Harrell* (Tex. Civ. App.), 159 S. W. 858; *Roberts* v. *Nunn* (Tex. Civ. App.) 169 S. W. 1086.

> Unless the articles of partnership provide otherwise, the surviving partner must proceed at once to wind up the partnership affairs, because there can be only a limited continuance of the business and that for the sole purpose of winding it up. He must wind it up within a reasonable time and account to the heirs and personal representatives of his business associate for any surplus remaining in his hands after the payment of the partnership debts, and, to enable him to effectively wind up the affairs of the partnership, he is entitled to quiet and exclusive possession of all of the firm assets.

To the same effect as above is *Heiner* v. *Mellon*, 304 U. S. 271. This case was decided by the Supreme Court some forty-eight days after it decided *Guaranty Trust Co. of New York, supra,* and in our opinion, throws more light on the issue which we have here to decide than does the *Guaranty Trust Co.* case. In *Heiner* v. *Mellon, supra*, A. W. Mellon, R. B. Mellon, and H. C. Frick owned all the stock of two distilling corporations; in 1918 these corporations were dissolved and the assets transferred to A. Overholt & Co. and West Overton Distilling Co., partnerships in which the three individuals were equal partners, for the purposes of liquidation. Frick died December 2, 1919, but the Mellons continued the businesses and kept the books for 1920 and subsequent years in the same manner as prior to Frick's death. In the 1920 partnership returns it appeared that the partnerships had made substantial profits from the sale of whiskey, but the Mellons in their individual returns included no part of this profit upon the theory that such income was not taxable income, due to the fact that the partnerships were liquidating. The Court said in part:

> The fact that the partnerships had been dissolved by Frick's death before 1920 does not affect the liability of the Mellons as surviving partners for income taxes on their distributive shares of the net profits made in that year. Compare *Rossmoore* v. *Anderson* * * * 67 F. 2d 1009; *Rossmoore* v. *Commissioner*, 2

Cir., 76 F. 2d 520. The business of A. Overholt & Company did not terminate on Frick's death. Although dissolved, the partnerships and the business continued, since, as stated in the Pennsylvania Uniform Partnership Act: "On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed." Throughout the year 1920, the business of selling stock on hand and deriving income therefrom was carried on precisely as it had been theretofore, and for the same purpose. Article 424 of Regulations 45 recognizes that even in the hands of a receiver a partnership must file a return.

It will be noted that the Supreme Court expressly distinguished between the dissolution and termination of a partnership, in so far as surviving partners are concerned, and in so doing approved the *Rossmoore* cases, 1 Fed. Supp., 35; affd., 67 Fed. (2d) 1009; 76 Fed. (2d) 520. These cases are authority for the propositions that dissolution of a partnership does not terminate it where liquidation is continued and that a partner remains liable for income taxes on his distributive share of the partnership income after dissolution.

In the instant proceedings there was no distribution of assets between the date of Elliott's death and the close of the calendar year 1939. We think the evidence shows that the business of the old partnerships was being wound up and liquidated in accordance with the Texas laws, and there is no evidence to the contrary.

In *C. A. Tooke*, 17 B. T. A. 690, and *J. E. Reynolds*, 17 B. T. A. 693, petitioners were equal partners in two partnerships having a fiscal year ending March 31. The partners reported on a calendar year basis. On September 30, 1922, both partnerships were dissolved and their combined business was incorporated in one corporation, the stock of which was issued to petitioners Tooke and Reynolds. In those cases the respondent contended that the last taxable year of the partnerships ended on September 30, 1922, and that the partners should include in their taxable income for the calendar year 1922 the income of the partnerships for the full fiscal year ended March 31, 1922, and also for the six-month period beginning April 1 and ending September 30, 1922. We held that the accounting period of the dissolved partnerships continued until March 31, 1923, and that the income of the partners from the partnerships for the period April 1 to September 30, 1922, should be reported in the returns of the partners for the calendar year 1923. The respondent acquiesced in both of those decisions. Cumulative Bulletin IX–1, pp. 46 and 54. The respondent in his reply brief says the *Tooke* and *Reynolds* cases are "irrelevant" because "There was no continuation of business by surviving partners after the death of one partner  *  *  *." We do not think this is a valid distinction. We do not think it makes any difference, as far as the present issue is concerned, whether the old partnerships are dissolved by agreement of the partners or by the death of one of the partners. In either case the partnerships stand dissolved.

We think the *Tooke* and *Reynolds* cases are controlling in the instant proceedings.

We, therefore, hold that the respondent erred in including in the income of Mary D. Walsh for the calendar year 1939 and in excluding from her income for the calendar year 1940 any part of the income of the Elliott-Walsh Oil Co. for the period from June 1 to July 7, 1939, and in including in the income of Wm. Fleming, Trustee, for the fiscal year ended August 31, 1939, any part of the income of the Elliott-Walsh Oil Co. for the period from June 1 to July 7, 1939, or any part of the income of the Hardesty-Elliott Oil Co. for the period from January 1 to July 7, 1939. As previously stated, the parties have agreed that for 1939 Fleming should report one-half of the income of Wm. Fleming, Trustee, for the fiscal year ended August 31, 1939.

*Decisions will be entered under Rule 50.*