George I. Ray, Incompetent, George I. Ray, Jr., Trustee v. Commissioner.
Ray v. Commissioner
Docket No. 36502.
United States Tax Court
1953 Tax Ct. Memo LEXIS 93; 12 T.C.M. (CCH) 1154; T.C.M. (RIA) 53328; October 8, 1953
*93 Held, the original petitioner's share of net income derived from the performance at Oak Ridge, Tennessee, of a certain construction subcontract, known as subcontract No. 63, was properly taxable to him in 1946. Elton B. Taylor, Esq., P.O. Box 453, Charlotte, N. C., for the petitioner. James R. Harper, Jr., Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined a deficiency in income tax of George I. Ray for the calendar year 1945 in the amount of $12,547.29. The question presented is whether income in the amount of $34,401.41, which was realized from a certain construction contract, is properly taxable in the year 1945, as per respondent's determination, or in the year 1946, as reported by the taxpayer. The original petition *94 upon which this action is based was filed by George I. Ray. Subsequently, by order of this Court dated December 19, 1952, George I. Ray, Jr., Trustee of George I. Ray, Incompetent, was substituted as petitioner herein and the title hereof duly amended to read as above captioned. Findings of Fact Those facts which were stipulated by the parties are so found and, by this reference, made a part hereof. George I. Ray, now an incompetent, is an individual who filed his income tax returns for the calendar years 1945 and 1946 with the collector of internal revenue for the district of North Carolina. In 1944 and 1945, Ray, acting as an individual, under the trade name of G. G. Ray and Company, undertook four engineering subcontracts in the atomic energy plant in Oak Ridge, Tennessee. These subcontracts were specifically described as subcontracts No. 30, No. 36, No. 52, and No. 63. Subcontracts Nos. 30 and 36 were completed prior to the end of 1944. Subcontract No. 52 was begun in December 1944, and completed on or about March 15, 1945. Subcontract No. 63 was a subcontract with J. A. Jones Construction Company, Inc. under which George I. Ray, by agreement of April 19, 1945, bound himself *95 individually to install a ventilator and to ventilate a number of buildings in the atomic energy project. In obtaining supervisory assistance on subcontracts Nos. 36 and 52, it was Ray's practice to offer and pay a fixed salary plus labor saving and profit sharing bonuses. On subcontract No. 36, Lee Holmes was employed as a superintendent on a salary, labor saving, and profit sharing basis. On subcontract No. 52, Lee Holmes, W. C. Cagle, and Chester L. Andres were employed on such a basis as superintendents. Following Ray's acquisition on April 19, 1945, of subcontract No. 63, he, Holmes, Cagle and L. M. Becknell, on or about May 8, 1945, entered into a written partnership agreement, the sole stated purpose of which was to perform and carry out such subcontract "* * * and any and all modifications or additions thereto." The partnership thus purportedly formed was to be terminated when subcontract No. 63 was completed. On or about August 20, 1945, a second such agreement was signed amending the first to admit Chester L. Andres as a party thereto. In all others respects, it was the same as the first agreement. During the latter part of October or first part of November, 1945, a third *96 such agreement was executed. This agreement was dated May 8, 1945, and was identical with that of August 20, 1945, except that it contained an amended termination clause reading as follows: "8. Unless the duration of this partnership is extended by the unanimous agreement of the five partners beyond January 31, 1946, the partnership shall terminate on that date." The signature of Lee Holmes was not affixed to this last agreement until the latter part of November or the first part of December, 1945. The extension embodied therein had been orally agreed to by the parties concerned sometime in September or October of 1945. Each of the three agreements involved provided that each of the supervisors should be compensated on the basis of salary, labor saving, and profit sharing. The labor saving factor in each instance was to be computed as a designated percentage of the amount by which the estimated labor costs determined in preparing the original bid exceeded the actual labor costs. Ray, who was the general manager of the work on subcontract No. 63, was to receive only a share of the profits. He was to receive neither a labor saving bonus nor a salary. Clause 7 in each of the agreements *97 provided that the parties thereto would bear any and all losses sustained in connection with subcontract No. 63 in the same proportions as they were to share the profits derived therefrom. Clause 9 thereof provided as follows: "9. It is agreed that the drawing accounts hereinabove referred to shall be suspended, as to any particular partner, when that said partner for any reason shall have to be away from the job, except on the business of the partnership. It is further agreed that if any one of the said five partners should voluntarily retire from the said partnership during the period of its specified existence as is hereinabove set forth, the said partner shall not be entitled to any portion of the labor savings or any portion of the net profits of the partnership as is hereinabove referred to." The physical labor on subcontract No. 63 was actually completed in October, 1945, and final payment for the period from April 16, 1945, to October 16, 1945, inclusive, was made on November 29, 1945. Such payment was in the total amount of $36,308.61. Included therein was an amount described as "Percentage previously retained" totalling $34,710.01. Some work was performed subsequent to *98 October 16, 1945, and the payroll of G. G. Ray and Company under subcontract No. 63 for the week ended October 24, 1945, included eight individuals and was in the aggregate amount of $844.19. Lee Holmes, whose duties were described as assistant manager, actually left Oak Ridge in October, 1945. Ray, engaged in winding up affairs incident to subcontract No. 63, did not leave Oak Ridge permanently until sometime in 1946. Checks in payment of certain obligations incurred in regard to subcontract No. 63 were issued by G. G. Ray and Company in December, 1945, and January, 1946. Disbursements made in December, 1945, included among others, the following: Date
Check No.
Payee
Amount
12-14-45
340
Roane-Anderson (Telephone)
$ 32.02
12-14-45
341
Roane-Anderson (Telephone)
8.69
12-14-45
343
Tenn. Dept. Employment Security
331.95
12-14-45
347
Sou. Bell Tel. Co.
30.74 In the month of January, 1946, a single disbursement of $50 was made to the bookkeeper. The books of account were closed sometime early in the year, 1946, and a final accounting and distribution made to the interested parties on dates and in amounts as follows: Date
Check No.
Payee
Amount
2- 5-46
361
L. M. Becknell Final Distribution
$ 938.52
2- 9-46
364
Chester L. Andres Final Distribution
5,448.28
2- 9-46
365
W. C. Cagle Final Distribution
1,448.28
2-14-46
366
Lee Holmes Final Distribution
448.28
*99 We find as an ultimate conclusion of fact that Ray, Becknell, Andres, Cagle and Holmes, acting in good faith and with a business purpose, intended to and did in fact become bona fide partners in G. G. Ray and Company for the performance of subcontract No. 63, and that such relationship did not terminate on or before December 31, 1945. Opinion VAN FOSSAN, Judge: The sole controversy here is whether Ray's share of the net income derived from subcontract No. 63 is taxable to him in 1945 or 1946. Ray originally reported such income in 1946. It is respondent's determination that the income is taxable to Ray in 1945. Petitioner contends that subcontract No. 63 was performed by a partnership consisting of Ray and four other parties, that the first and only taxable period of the partnership did not end until January 31, 1946; and that, therefore, Ray's distributive share of partnership profits constitutes income to him in 1946. Respondent, in defense of his determination, takes the position that no valid partnership was ever formed. He contends that the agreements signed by Ray and his associates, three of whom had been employed as supervisors on subcontracts previously acquired and *100 performed by Ray, amounted only to a continuation of the old employment arrangement; that Ray, in fact, performed subcontract No. 63 as a sole proprietor; and that, since the work thereon was completed and full payment therefor was received in 1945, Ray's share of such income was to be reported in that year. The applicable statutory provisions are sections 3797 (a) (2), 47 (g) and 188 of the Internal Revenue Code. [1]
*101 Whether the relationship which existed between Ray and his associates is, for tax purposes, to be considered that of partnership is entirely a question of fact. Such question is to be resolved by viewing all the evidence in the record before us bearing upon the true intent of the parties involved. As was said by the Supreme Court in Commissioner v. Culbertson, 337 U.S. 733: "The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard * * * but whether, considering all the facts - the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent - the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. * * *
* * * "If, upon a consideration of all the facts, it is found that the partners joined together in good faith to conduct a business, *102 having agreed that the services or capital to be contributed presently by each is of such value to the partnership that the contributor should participate in the distribution of profits, that is sufficient." * * * While the above language was particularly directed to the problem of determining the bona fides of a family partnership, the same principles are applicable here. Having applied such test to the facts before us and having considered all appropriate factors tending to show the true intention of the parties concerned, we are convinced, and have, therefore, found as a fact, that Ray, Becknell, Andres, Cagle and Holmes, acting in good faith and with a business purpose, intended to and in fact did become bona fide partners in the performance of subcontract No. 63. Accordingly, we here so hold. Nor do we agree with respondent's alternative argument that the partnership which was formed in May, 1945, terminated on or before December 31, 1945. The record plainly shows that the duration of the partnership extended beyond such date. This is true whether or not we consider the agreement of the parties as operative in effecting such extension. Although apparently formed in North Carolina, *103 the partnership operated in Tennessee. The laws of both states relating to partnerships are identical in providing that a partnership does not terminate until its affairs have been completely wound up. See N.C. Gen. Stat. 1943, Section 59-60; Williams' Tenn. Code 1934, Section 7869. In the instant case, partnership affairs were not would up and final accounting and distribution made to the partners until sometime in 1946. Nor does the evidence afford any justification for a finding that such winding up was unduly prolonged. Thus, even if we ignore the effects of the partnership extension agreement, we find that the partnership remained in existence after December 31, 1945. This being true, the first and only accounting period of the partnership did not end until sometime beyond such date. Ray's distributive share of partnership profits is, therefore, taxable to him in 1946. Cf. also Mary D. Walsh, 7 T.C. 205. Respondent's determination to the contrary is reversed. Decision will be entered under Rule 50. Footnotes
1. SEC. 3797. DEFINITIONS. (a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof - * * *
(2) Partnership and partner. - The term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term "partner" includes a member in such a syndicate, group, pool, joint venture, or organization. SEC. 47. RETURNS FOR A PERIOD OF LESS THAN TWELVE MONTHS. * * *
(g) Returns Where Taxpayer Not in Existence for Twelve Months. - In the case of a taxpayer not in existence during the whole of an annual accounting period ending on the last day of a month, or if the taxpayer has no such annual accounting period or does not keep books, during the whole of a calendar year, the return shall be made for the fractional part of the year during which the taxpayer was in existence. SEC. 188. DIFFERENT TAXABLE YEARS OF PARTNER AND PARTNERSHIP. If the taxable year of a partner is different from that of the partnership, the inclusions with respect to the net income of the partnership, in computing the net income of the partner for his taxable year, shall be based upon the net income of the partnership for any taxable year of the partnership (whether beginning on, before, or after January 1, 1939) ending within or with the taxable year of the partner.↩